No. 187.—WALKER & VAUGHT *v.* G. W. KIMBROUGH, Administrator—
R. B. SADLER, Tutor et al., Intervenors.

The community is dissolved by the death of one of the spouses, and the title to one-half
thereof vests absolutely in the heirs, and the other half in the survivor. The survivor
is, therefore, without legal authority to encumber or mortgage the one-half interest of
the heirs in the community.

The parish court has jurisdiction of an action of partition of the community between the
heirs and the survivor without reference to the amount involved.

In this case notes were given with mortgage to secure advances to be made and supplies
furnished and to be furnished. At the close of the transactions, plaintiffs bring suit on
the account current, which includes in its items the amounts of the notes, and they
ask a recognition and enforcement of the mortgage given to secure the notes.

Held—That the notes having been given for a particular purpose, namely, to enable the mer-
chants to negotiate them, and having been taken up by the agents of the plaintiffs, con-
fusion took place, and they, the notes, became extinguished, and the mortgage given to
secure them was also extinguished; and that as the mortgage was only given to secure
the notes, it had no effect as a security for the account.

APPEAL from the Fourteenth Judicial District Court, parish of
Morehouse. *Ray,* J. *Todd & Brigham,* for plaintiffs and appel-
lees. *C. T. Dunn* and *D. C. Morgan,* for defendants and appellants.

LUDELING, C. J. The plaintiffs, who are commission merchants,
sue for a balance due on an account current between themselves and
the commercial and planting partnership of Montgomery, Peterkin &
Co., composed of Robert D. Montgomery, George A. Peterkin, W. R.
Ward and M. D. L. Allen. The petitioners allege that Ward is dead,
that M. D. L. Allen has left the State, and that Montgomery and
Peterkin are insolvent; and they allege further that the balance due
them, $8205 01, is secured by a mortgage executed by W. R. Ward on
his individual property.

The administrator filed an exception, alleging that the obligation
sued upon is a joint obligation and all the co-obligors are not sued.
We are satisfied that the firm of Montgomery, Peterkin & Co. was a
commercial partnership, and though they were engaged in cultivating
plantations, their obligations are solidary.

The defendant filed an answer containing a general denial and alle-
gations that the account contained illegal, usurious and improper
charges to the extent of at least one thousand dollars, and that the
interest has been compounded, etc.

Ida Ward, and her husband Sadler, who joined his wife, to authorize
her to prosecute this suit, and as tutor to the minor children of W. R.
Ward and his wife, C. N. Smith, both deceased, filed a petition of
intervention, alleging that their mother died on the eighteenth of
March, 1867, and that at the period of her death the property in the
possession of the husband was community, and one-half of it belonged
to them, subject to the debts; that a portion of the lands thus owned
had been regularly partitioned, and the partition had been duly
homolgated by the judgment of the court; that their father's succes-

sion is indebted to them in a large amount, for which they have a mortgage and privilege. They further allege that the plaintiffs are endeavoring to establish and enforce a mortgage to secure the payment of their alleged indebtedness on property, which at the time the alleged mortgage bears date, to wit: the twenty-fourth of April, 1867, belonged to them as aforesaid, as their mother had died anterior to that time. They further allege that the account is incorrect in many particulars, which they specify. They allege that the notes (which are said to be secured by a mortgage) were never sold or discounted by Walker & Vaught; that the discount which is deducted from said notes and omitted to be credited, of about $1000, together with the interest thereon, was only a device and scheme to wrong Montgomery, Peterkin & Co.

The plaintiffs excepted to the intervention on the ground that the petition disclosed no cause of action; that the partition under which the intervenors claim a portion of the land mortgaged was absolutely null, for the reason that the court which rendered the judgment was without jurisdiction *ratione materia*, as the property partitioned exceeded in value $500, and that the property partitioned was community and could not be partitioned until the community had been settled, and that for the same reason they can not claim half the proceeds of property belonging to the community, or any specific part of said property.

This exception was overruled, and answers to the intervention were filed. But subsequently the judge *a quo* refused to permit the intervenors to prove any allegation made by them, and dismissed their intervention on the grounds stated in the plaintiffs' peremptory exception. To this ruling the intervenors retained a bill of exceptions.

We think the learned judge erred. The petition alleges that the mother of the intervenors died in March, 1867, before the mortgage was executed. At the moment of her death the rights of the heirs, although residuary, were vested in the half of the property composing the community, and the surviving partner of the community could not legally mortgage the property so as to affect the rights or interests of the minors. The mortgage itself recites that W. R. Ward is a widower.

The parish court had jurisdiction to partition property of the community. Art. 87, Constitution.

We are not prepared to decide that the partition of the community property was premature. There is nothing in this record to justify such a conclusion. For aught that appears, the debts of the community had been paid before partition, and we will not presume that the parish court acted improperly but correctly.

In fact, the theory on which alone the mortgage claimed could be

maintained, that the mortgage was intended as a continuing guarantee to secure any balance due on the account, would establish the fact that the debt due to the plaintiffs is not a community debt.

The mortgageor, Ward, died in 1869, and the account runs to about the period of his death, and between the creation of the mortgage and the date of the death of Ward large credits and debts appear on the account, showing that the balance, whatever it may be, is due by Ward and not by the community, which had ceased to exist before the execution of the mortgage. We think, therefore, that the intervenors should have been permitted to introduce proof to establish their allegations. But the conclusion to which we have arrived in the controversy between the plaintiffs and defendants renders it unnecessary to remand this cause.

As between the plaintiffs and defendants, the principal question is whether or not the plaintiffs have a mortgage to secure the balance due them on account, or the balance due on the two notes. We regard this suit as based on the account current. The two notes which were described in the act of mortgage are items in the account, and copies of them are annexed with the account. The notes are alleged to be destroyed, but no affidavit of their loss or destruction is made, nor is there any proof that their loss or destruction had been advertised, which would have been done, as it is necessary, if suit had been instituted on them.

The account current shows that the two notes were made in favor of the plaintiffs, one for $4469 27 and the other for $6718 52, and that the plaintiffs charged defendants with the amount of these two notes and credited them with the net proceeds thereof, $10,212, and that the plaintiffs continued to charge interest on the various items of the account preceding the execution of the notes up to the close of the account. We think it is clear that these notes were not intended to novate the account or any part of it, but that it was a mode adopted whereby the agents of the defendants were to raise money for their own use, or to enable them to exact the charges for discounting and advancing. If the notes had been given in settlement of the account, the whole amount of the notes would have been credited on the account, and interest on the account would have been arrested.

The notes having performed the functions for which they were made, and having been taken up by the agents of the makers, they were extinguished by confusion, and they are now mere vouchers in the hands of the factors to prove items of their account. The mortgage was given to secure the payment of the notes, no doubt the better to enable the factors to discount them, and when the notes were extinguished the mortgage, as an accessory, was also extinguished. C. C. arts. 2217, 3287, 3411; Hill v. Hale, 4 R. 416.

The attempt to explain or contradict the written act of mortgage by the testimony of Walker, one of the plaintiffs, was properly not allowed. The notarial act declares that the mortgage was given "to secure the punctual payment of the aforesaid two promissory notes at maturity, as well as of all interest that may accrue thereon," and there is nothing which in the remotest degree indicates that the parties intended that the mortgage should be a continuing guarantee to secure the payment of the account current or any balance of account, and we are not at liberty to make new contracts for the parties.

It is therefore ordered and adjudged that the judgment of the district court be avoided and reversed; and it is further decreed that there be judgment in favor of the plaintiffs for the sum of $7227 19, with five per centum per annum interest from judicial demand, with costs of the district court, to be paid in due course of administration. It is further ordered that the costs of appeal be paid by the plaintiffs and appellees.

---

HOWELL, J., *dissenting.* On second February, 1867, the firm of Montgomery, Peterkin & Co. owed plaintiffs $11,187 79 on an account, for which they made two notes, with interest after maturities, to the order of plaintiffs and payable in December following. The account between the parties was continued without change. On the thirtieth March, 1867, the proceeds of one of these notes was placed to the credit of the makers, a commercial and planting firm. On the twenty-fourth of the next month (April) it appearing that the debt exceeded the amount of the two notes, the excess was paid by W. R. Ward, a member of the firm of Montgomery, Peterkin & Co., who, at the same time, executed a mortgage on his property to secure the payment of· the notes, for the amount of which he confessed judgment in the act and bound himself to ship to plaintiffs the cotton to be raised on their plantations by his firm. No change was made in the account. On the fifth of June following, the proceeds of the other note was placed to the credit of Montgomery, Peterkin & Co., the makers. On the twenty-eighth December, 1867, the date of the maturity of the last of the notes, the amount of both was charged in the account, which being closed, shows a balance something less than the two notes. The question is: Were these notes paid by this course of dealing? I think not. When they were discounted the proceeds were placed to the credit of the makers, but they were still outstanding as a subsisting debt against both the makers and the indorsers and secured by the mortgage executed by Ward, whose succession, as I think, is sued in this action to recover the amount due on them with mortgage. When taken up by the indorsers (the plaintiffs), was it a payment of the

notes or did they return to plaintiffs with the mortgage accessory? I think the latter. They were evidently paid with the funds of the indorsers, who were bound with and for the makers, and the payment was with legal subrogation, even if not specially protected by the terms of the mortgage. But Ward, the mortgageor, executed the mortgage expressly to secure their payment at maturity. The makers, in whose behalf he gave this security, did not pay them. No funds were provided either by Ward or the makers for their payment, and hence the obligations of the act of mortgage are still in force. It certainly was not contemplated that the payment by plaintiffs *as indorsers* would extinguish the mortgage, for it was given in their favor, or of any holder, to secure their payment by the makers or the mortgageor. Had the latter or either of them furnished the funds to make the payment, there would have been no occasion for this suit or any other on this debt.

I think the mortgage is in force upon the property which Ward was capable of mortgaging and deem it unnecessary to determine the nature of the debtor firm.

Howe, J., *dissenting.* All that was necessary to the decision of the case of Ward *v.* Douglas, 22 An. 463, was the settlement of the question whether or not the plaintiffs herein were entitled to executory process. The question of the existence of the notes and their accessory mortgage is still open.

I think the notes still exist to the amount of advances made and remaining unpaid, and that the mortgage may be enforced.