SANDOVAL et al. v. PRIEST et al.

(Circuit Court of Appeals, Fifth Circuit. January 20, 1914.)

No. 2,439.

1. EVIDENCE (§ 29*)—JUDICIAL NOTICE—FOREIGN LAWS—LAWS OF PRECEDENT GOVERNMENT.

The United States courts in Texas take judicial notice of the laws of Mexico in force in that territory prior to its independence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 36, 37, 39, 43–46, 48; Dec. Dig. § 29.*

Judicial notice of public laws and regulations, see note to Smith v. City of Shakopee, 44 C. C. A. 4.]

2. HUSBAND AND WIFE (§ 247*) — COMMUNITY PROPERTY — DESCENT UNDER SPANISH LAW IN FORCE IN TEXAS.

Under the Spanish law in force in Texas while it was a part of Mexico, there generally existed between husband and wife a community of

acquêts and gains, and where such community existed all property acquired by either spouse by onerous title, as by purchase, during the existence of the marriage, became community property, and on the dissolution of the marriage by the death of one of the spouses an estate in and to one-half of such property at once vested by operation of law in the heirs of the deceased spouse and the estate so descending in realty was a legal title.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

3. HUSBAND AND WIFE (§ 247*)—COMMUNITY PROPERTY—DESCENT.

A husband purchased land in Texas in 1809 which under the law of Mexico then in force became community property, and so remained until his wife's death in 1832. *Held*, that on the dissolution of the community by such death the children of the wife as her heirs took full legal title to one-half of the land, which was not divested by any subsequent change in the laws of the state.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

In Error to the District Court of the United States for the Western District of Texas; Thos. S. Maxey, Judge.

Action at law by Alberto Sandoval and others against Theo Priest and others. Judgment for defendants, and plaintiffs bring error. Reversed.

The plaintiffs in error on this cause brought suit in trespass to try title to recover the title and possession of a tract of land containing about 82 acres alleged to be of the reasonable cash market value of $300 per acre, situated in Bexar county, Tex.

The defendants in error pleaded, as against plaintiffs in error, not guilty, and the statutes of limitations of three, five, and ten years.

The plaintiffs in error claimed title by descent from their father, Carlos Sandoval, who was a grandson of Maria de Jesus Carbajal, who was the first wife of Mariano Rodriguez, who purchased the entire Gavino Valdez grant including the land in controversy in Bexar county, Tex., which was granted by the Spanish government to Gavino Valdez, the parish priest of the village of San Fernando, now the city of San Antonio, in 1798. Mariano Rodriguez married his first wife, Maria de Jesus Carbajal, in the year 1800. On September 15, 1809, Mariano Rodriguez purchased the entire Valdez grant from the original grantee, and conveyance duly made. The said first wife of Mariano Rodriguez died in 1832, and plaintiffs in error are Adelaida Lopez de Sandoval, the wife of her grandson, and Alberto Sandoval and Felix Sandoval, her great-grandchildren.

On the trial in the lower court, after plaintiffs in error had introduced their evidence in chief, the trial court announced that if plaintiffs in error had any title it was an equitable title and that it was not necessary for them to proceed further unless they expected to prove that the legal title had been conveyed to them or to some one under whom they claim, or had in some manner become vested in them; and upon the plaintiffs in error announcing that, unless the testimony they had introduced showed that they had a legal title, then they had no legal title, since Mariano Rodriguez at his death left a will, which was duly probated, by the terms of which he bequeathed and devised all of his property, whether real or personal, to three of his children by his second wife, the court announced that it would give to the jury a peremptory instruction to render a verdict in favor of all of the defendants against all the plaintiffs, without requiring the defendants in the lower court to introduce any testimony whatever. And the court gave a peremptory instruction to the jury to return a verdict in favor of all the defendants against all the plaintiffs, which verdict was returned by the jury under said peremptory instruction; and the court then rendered judgment that plaintiffs in error take

nothing by their suit against defendants in error, and that defendants in error go without day and recover of plaintiffs in error all their costs, to which judgment the plaintiffs in error in open court then and there excepted.

Don A. Bliss, of San Antonio, Tex., for plaintiffs in error.

Marcus W. Davis, Wm. Aubrey, and J. D. Guinn, all of San Antonio, Tex., for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and CALL, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). What estate did the heirs of Maria de Jesus Carbajal, wife of Mariano Rodriguez, take to the property in controversy upon her death in 1832; the parties and property then being in Mexico?

Bearing upon this question, the following propositions appear to be sound: ·

[1] First. The United States courts sitting in Texas take judicial notice of the laws in force in that territory prior to the independance thereof, since said laws were the laws of an antecedent government to which the government of Texas is the successor. See Fremont v. United States, 17 How. 542, 15 L. Ed. 241; United States v. Perot, 98 U. S. 428, 25 L. Ed. 251.

[2] Second. Under the Spanish law in force in Texas under the government of Mexico prior to the independence of Texas, there generally existed between husband and wife a community of acquêts and gains, and where such community existed all property acquired by either spouse by onerous title as by purchase during the existence of the marriage became and was community property. Scott v. Maynard. Dallam, Dig. 548; Parker v. Chance, 11 Tex. 513; Savenat v. Le Breton, 1 La. 520.

Third. In Texas prior to independence, upon the dissolution of the marriage by the death of one of the spouses, an estate in and to one-half of the community property at once vested by operation of law in the heirs of the deceased spouse. White's Recop. 61; Schmidt's Civ. Law of Sp. & Mex. arts. 56, 57; Thompson v. Cragg, 24 Tex. 582; Panaud v. Jones, 1 Cal. 488; Veramendi v. Hutchins, 48 Tex. 531, 550; Walker v. Kimbrough, 23 La. Ann. 637. For an interesting case on the line of the proposition involved, see Garrozi v. Dastas, 204 U. S. 64, 27 Sup. Ct. 224, 51 L. Ed. 369.

Fourth. The Valdez grant, embracing the land in controversy in this suit, having been purchased by Mariano Rodriguez from the original grantee, Gavino Valdez, in the year 1809 during the existence of the marriage relation between him and his wife, Maria de Jesus Carbajal, became and was community property, and, the same so continuing up to her death in 1832, the title of the said grant, including the land in controversy in this case, at once vested at her death by operation of law in her heirs (her children, Schmidt's Civ. Law of Sp. & Mex. arts. 1212, 1213), under whom plaintiffs in error claim.

An estate vesting by operation of law upon an event certain is a legal estate. After death of husband and dower assigned, the dower estate is a legal estate. After the death of the wife and curtesy

consummate, the surviving husband has a legal estate. See authorities quoted under proper heads in "Words and Phrases."

So we think it clear that by descent cast in 1832 the heirs of Maria de Jesus Carbajal took a legal estate in and to one-half of the Galvez grant including the property in controversy. Their right or title to this estate is in and of and from the law, and it is therefore a full legal title as the term is used and has meaning in our jurisprudence.

[3] Has anything happened since the independence of Texas to divest that legal title or change its character so as to deprive the holders of the right to assert the same on the law side of the United States court having jurisdiction of the parties and the property?

Without substantially disputing any of the propositions hereinbefore stated and agreeing to the same, the defendants in error contend, and therein are supposed to voice the opinion of the trial judge, that under the laws of Texas in relation to the community of property between husband and wife and the rulings of the Texas courts the interest or estate of the wife and her heirs in and to the community property is more than a mere expectancy amounting to a substantial right existing before the dissolution of the community, and therein and therefor and growing out of the administration and control of the community by the husband the wife's title to community property is entirely equitable and never becomes a legal title, and that this has become in Texas a rule of property which this court is bound to follow, and many adjudged cases of the Texas courts supporting these propositions are cited. The leading case is said to be Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87, decided in 1887, following Hill v. Moore, 62 Tex. 610, decided in 1884. Edwards v. Brown seems to have been followed down to Patty v. Middleton, 82 Tex. 586, 17 S. W. 909, and Stiles v. Japhet, 84 Tex. 91, 19 S. W. 450, and perhaps later; but it is noticeable that Wiess v. Goodhue, 98 Tex. 274, 83 S. W. 178, seems to declare different doctrines and to have gone back to the views in early cases, and as declared by Judge Bell in Thompson v. Cragg, 24 Tex. 582; and see Veramendi v. Hutchins, 48 Tex. 531. In Belt v. Cetti, 100 Tex. 92, 95, 93 S. W. 1000, it is distinctly held that:

"Upon the death of Mrs. Roche one-half of the community property of herself and Thomas Roche vested in her children subject to the payment of debts against the community estate"—citing articles 1696, 1697, Rev. Stat. Texas, and quoting with approval Wiess v. Goodhue, supra.

The matter has been learnedly and exhaustively argued and considered in briefs submitted by counsel for both parties, citing probably all of the Texas cases, from Dallam down, bearing on the propositions involved, and it would be interesting to review all the decisions, each in the light of the facts and issues involved, with a view to having, if possible, the jurisprudence as declared by the Texas courts, and determine what rule of property has been established as to the wife's interest in the community property under the laws of Texas both before and after the dissolution of the community by the death of one of the spouses; but, under the view we take of this case, such review is not necessary, as we find no case at all affecting

210 F.—52

the title cast under Spanish (Mexican) law, and for this case we say that before Texas became independent and while under the Spanish law the community of acquêts and gains existing between Mariano Rodriguez and Maria de Jesus Carbajal was dissolved by the death of said Maria, and thereupon her heirs took under the law a full legal title to her half of the community property, and since then no rule of property established in Texas by statute or judicial decision could divest said heirs of such legal title.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to grant a new trial and thereafter proceed according to law and the views herein expressed.