WM. R. BAKER v. W. T. WASSON.

*(Case No. 692.)*

1. RAILROAD STOCK. — The liability of one, who under a claim of right, but without authority from the true owner, procures the transfer of railroad stock to himself, and the issuance to himself of new stock thereon, is for that act and not for any subsequent disposition he may make of stock thus wrongfully acquired.

2. STOCK IN INCORPORATED COMPANIES. — Shares in incorporated companies, though not visible and capable of manual delivery, having value, possess the characteristics of property. Shares in railway companies are in Texas recognized as personal property, and are subject to execution and sale under process of garnishment.

3. STOCK—ACTION.— The remedy of a stockholder whose stock has been illegally and wrongfully cancelled, and new stock in lieu thereof issued to

an unauthorized person, is against the company, whether the wrongful issuance of the new stock was the result of negligence or fraud.

4. SAME.— If the new stock thus wrongfully issued was procured by a fraudulent combination between the company and the party who received it, both would be liable in damages to the rightful owner. The party receiving the new stock would, however, not be liable if he neither had actual nor constructive notice of the invalidity of his own title.

5. SAME.— The non-production of the original stock by one who receives in lieu thereof new stock, would not be necessarily fatal to his title to the new stock. If he purchased *bona fide*, his title to the new stock would be good.

6. CHARGE OF COURT.— See charge of court regarding the purchase of stock, held error.

7. TORT—PRINCIPAL AND AGENT.— One who aids in procuring the illegal issuance of new stock in an incorporated company to himself, cannot, if he does it under circumstances which would make him responsible if acting in his own right, be relieved from liability by showing that he acted as agent for another.


ERROR from Harris. Tried below before the Hon. James Masterson.

Suit begun June 27, 1873, by W. T. Wasson, appellee, against Wm. R. Baker and Thomas M. Shirley, to recover title to, or the value of, ten shares of stock in the Houston & Texas Central Railway Company. The plaintiff alleged that defendants had converted and claimed his stock in 1871, and that they had thereby damaged him five thousand dollars, which he claimed to be the value of his stock.

Both defendants disclaimed title to the stock. Baker alleged that he had purchased and paid for the stock with money belonging to Moses Taylor, of New York; that the title was only made to him to effect the purchase for Taylor; that he never had any personal interest, and had long since transferred it to Taylor; that he dealt with it on the faith of title in W. B. Wasson, and not in plaintiff; that the records of the company supported W. B. Wasson's title, and that it was the stock of W. B. Wasson, and not of plaintiff, on March 11, 1871.

Defendant Shirley, amending, pleaded: That the claim of plaintiff was fraudulent; that the stock was, on the 9th of

March, 1871, the property of W. B. Wasson, plaintiff's father, on which day defendant bought it from the father and gave him a check for the money, which the father refused to collect, and confederated with the son to claim the stock and cheat defendant; and that when defendant purchased, it stood on the transfer books in W. B. Wasson's name, and, in fact, belonged to him.   Plaintiff then demurred to so much of defendant's pleading as sought to avoid liability for a conversion, on the ground that Baker had acted merely as an agent, as presenting no defense.

By supplemental petition, the Houston & Texas Central R. R. Co. was made a party defendant, and prayer was made for *mandamus* to recognize plaintiff's title and issue to him stock.

It appeared from the evidence, that on March 9, 1871, there stood on the books of the H. & T. C. R. R. Co., ten shares of stock in the name of W. B. Wasson.  On that day Thos. M. Shirley went to Wasson's house and procured from him a transfer to the ten shares of stock, giving a draft for the purchase money.  The transfer Shirley indorsed to W. R. Baker on the 11th day of March, 1871, and from that time until the 14th day of March, 1873, the stock stood on the books of the company in the name of Baker.  Baker transferred the stock in July, 1871, to Moses Taylor.  He testified that he had no notice that any one else claimed it when it was transferred to him by Shirley.  Wasson had declined to receive money on Shirley's draft, but Baker testified that he did not know this fact until after Shirley had transferred the stock to him.  W. T. Wasson, appellee, a son of W. B. Wasson, claimed that though on the 9th of March, 1871, the stock stood on the company's books in the name of W. B. Wasson, yet in June, 1870, his father had transferred it to him, and presented in proof the original certificate for the ten shares, with a transfer thereon to him from his father, dated June 1, 1870.  He testified that this certificate, so indorsed, was then and from that date in his hands, and not in his father's, and that his father, on the 9th

of March, 1871, when he sold to Shirley, neither had the title nor possession of the certificate.

The court, after instructing the jury that the effect of the transfer of March 9, 1871, of W. B. Wasson to Shirley, was to convey whatever title he had to Shirley, said: "If, however, the proof establishes to your satisfaction, that on the 9th day of March, 1871, when W. B. Wasson sold to Shirley, the ten shares of stock had already been sold, and the sale completed to another, then, unless the proof shows that the acts of W. T. Wasson, by his dealing with the ten shares, enabled W. B. Wasson to deal with the same as his own, and unless W. B. Wasson did so deal with parties, then it would operate a fraud not to enforce the last transfer — the oldest *bona fide* transfer carried the title; and in the event that you find from the evidence that W. B. Wasson had *in fact* sold ten shares to W. T. Wasson, then W. B. Wasson had nothing to sell. On the other hand, if you find from the facts and circumstances in evidence that plaintiff's claim is fictitious and · acquired after the sale of his father to Shirley, you will disregard such fictitious title." ᚉ ᚉ ᚉ

There was much conflict in the testimony in regard to the circumstances surrounding the purchase by Shirley.

The court sustained objections to the plea of agency as presenting no defense. Verdict and judgment for plaintiff for $4,000, $320 of which was remitted.

*E. P. Hill* for plaintiff in error.— The plaintiff in error rests the case upon the proposition, that the facts show that the stock of the defendant in error has not been converted by him. Field on Corp., secs. 127, 128; Gilpin *v.* Howell, 5 Barr, 57; Bank *v.* Lanier, 11 Wall., 369; Pratt *v.* Taunton Copper Co., 123 Mass., 110 (reported in 25 American Reports, 37); 2 Potter on Corp., secs. 256, 257, 260, 262; Rogers *v.* Huie, 2 Cal., 571; Sewall *v.* Bank, 17 Serg. & R., 287; Peoples' Bank *v.* Gridley, Cent. Law Journal, September 26, 1879.

That the court below erred in sustaining plaintiff's exceptions to defendant's answer, setting up that he was only the

medium through whom the money of Moses Taylor was paid
to his agent Shirley.   See Loring *v.* Mulcahy, 3 Allen (Mass.),
575.

*John H. Duncan* for plaintiff in error Baker.

*Hutcheson & Carrington* for defendant in error.

I. The court erred in sustaining plaintiff's exception to de-
fendant's amended answer, and to so much thereof as sets up that
he was only the medium through which the money of Moses
Taylor was paid to his agent Thomas Shirley.   2 Hilliard's
Law of Torts, 3d ed., pp. 454–459, §§ 20–22, title, Master and
Servant; Story on Agency, §§ 311, 312; Lee *v.* Matthews, 10
Ala., 687; Hoffman *v.* Carow, 22 Wend., 318, 319; Spraights *v.*
Hawley, 39 N. Y., 447; Arthur *v.* Balch, 23 N. H., 160; Hig-
ginson *v.* York, 5 Mass., 341.

II. If agency was ever a defense to conversion it would not
be in this case, because Baker had notice of a defect in his title
before he assigned it to his principal, and in the meantime voted
and used the stock as his own.   Baker testified: He learned
from Shirley a month or so after stock was bought, that W. B.
Wasson refused to take the money for the stock, but did not
learn the particulars until J. C. Hutcheson told him in Janu-
ary, 1872.   He transferred it to Moses Taylor in July, 1871.
The stock was on the books in his name in 1871, and he voted
it then, but not in 1872.   The stock was transferred to Baker
March 11, 1871.   H. Hall testified:   He was assistant secre-
tary of the Houston & Texas Central R. R. Co.   This stock
stood on the books of the company in the name of W. R.
Baker from March 10, 1871, till May, 1873.   He produced the
transfer books, and a transfer from W. R. Baker to Moses
Taylor in May, 1873, for fifteen shares of stock, including the
ten shares in controversy.   This suit was filed February 27,
1873.   Hall did not know when Baker sent the certificates on
to Taylor.   Mayfield *v.* Arnold, 11 Tex., 141; vol. 1, part 2,
Leading Cases in Equity, 123; Bayard *v.* Farmers' and Mech.
Bank, 52 Pa. St., 232.

III. The charge complained of was the law of the case. If W. B. Wasson had sold his stock when he transferred it to Shirley, he had nothing to sell and Shirley got nothing. Dodd *v.* Arnold, 28 Tex., 101; Salters *v.* Everett, 20 Wend., 275–280.

BONNER, ASSOCIATE JUSTICE. — This suit differs from that of Strange *v.* H. & T. C. Railway Co., *infra,* in this, that the last named case was brought against the company for wrongfully issuing new stock to which the plaintiff claimed that he was entitled; the present suit is against appellant William R. Baker and Thomas M. Shirley for having, as it is alleged, improperly obtained a transfer to a certificate of stock claimed by appellee Wasson, and for having procured new stock therefor in the name of Baker.

Wasson sues for title to the new stock, or for its value as damages. Subsequently the H. & T. C. R'y Co. was made a party defendant.

Judgment below was rendered for Wasson for $4,000 and interest, as damages for value of the stock, against defendants Baker and Shirley; and under the charge of the court, that from the evidence there was no connection between the defendant company and the other defendants, judgment was rendered for the company.

Baker alone appeals, and rests his case upon the propositions: *First,* that the facts show that the stock of the company had not been converted by him; *second,* that the court erred in sustaining the exceptions to his answer setting up that he was only the medium through which the money of Moses Taylor was paid for the stock through his agent Shirley.

I. The liability of Baker, if any, under the evidence, must be for alleged participation in the act of procuring the transfer of the original stock to have been taken in his own name and the issuance of new stock thereon, and not for any subsequent disposition he may have made of this new stock. Bayard *v.* Bank, 52 Pa. St., 235.

Shares in incorporated companies, though not visible or

tangible and capable of actual, manual delivery, have, nevertheless, long been recognized as having value and many other characteristics of property. Fisher *v.* Essex Bank, 5 Mass., 377.

Railroad shares, by our statute now in force, are denominated personal property, and are subject to levy and execution and sale under process of garnishment. R. S., arts. 208, 209, 210, 2297, 4138.

The company only, had the power to cancel the old stock and issue new, and if this was done illegally and wrongfully, whether through negligence or fraud, Wasson, if the true owner of the old stock, had his remedy by suit against it. Bayard *v.* Bank, 52 Pa. St., 234; Salisbury Mills *v.* Townsend, 109 Mass., 121; Strange *v.* Railway Co., *infra.*

This liability rests, perhaps, rather upon the ground of breach of contract upon the part of the company, of its undertaking to hold the stock for the benefit of the true owner of the certificate, than upon that of a technical tort.

In case of fraudulent combination between the company and Baker, by which the new stock was wrongfully issued to him, so as to defeat the just rights of Wasson, under circumstances which would make the company liable, Wasson would have his remedy against both for damages. Bayard *v.* Bank, 52 Pa. St., 234.

Baker would not be thus liable, however, if he did not have notice, or was not in law charged with notice, of the invalidity, if any, of his own title. Pratt *v.* Taunton Mills, 123 Mass., 112; Bayard *v.* Bank, 52 Pa. St., 234.

The non-production of the original certificate of stock was not of itself necessarily fatal to the title of Baker, and if he was a *bona fide* purchaser, his title was good to the new stock issued to him. In this event, Wasson's remedy, if any, would be against the company, if they issued the new stock without due regard to the merits of his title. R. R. Co. *v.* Schuyler, 34 N. Y., 80.

That portion of the charge of the court by which the liability of Baker was made to depend upon the question, whether

he or Wasson had the older title, without regard to the good faith otherwise of the title to Baker, was calculated to mislead the jury, and was erroneous.

II. If Baker aided in the illegal procurement of the new stock to himself, under circumstances which would make him, if acting in his own right, responsible to Wasson, the alleged fact that he was acting therein as the agent for Moses Taylor, would not relieve him from liability.

This rests upon the principle that the master cannot confer upon the servant authority to commit a tort upon the right or property of another. Story on Agency, § 311; Lee v. Mathews, 10 Ala., 682; Hoffman v. Carow, 22 Wend., 318; Spraights v. Hawley, 39 N. Y., 446; Higginson v. York, 5 Mass., 340; Arthur v. Balch, 23 N. H., 160.

In the case of Loring v. Mulcahy, 3 Allen, 575, cited by counsel for appellant, the party sought to be charged was a mere depositary or naked bailee of the goods without any participation in the act of conversion.

REVERSED AND REMANDED.

[Opinion delivered March 23, 1880.]