Opinion by
Will-son, J.
§ 584. Parties; who may he impleaded; test of pleading on general demurrer; case stated. Lizzie Sears, a minor, was the owner of twenty shares of stock in the Galveston City Railroad Company, for which said company had issued a certificate in her name. H. H. Sears was the legal guardian of her estate, and, as such, inventoried this certificate of stock as a part of said estate. While he was such guardian, he borrowed of appellant Kempner $425, for which he executed a promissory note, signing the same as guardian aforesaid, and at the same time, January 1J, 1884, transferred and delivered to said Kempner, as guardian aforesaid, the said certificate of stock. April 1, 1884, Kempner, through his agent, surrendered said certificate to the company, and the shares of stock were transferred to him on. the books of the company, and a new certificate therefor was issued and delivered to him by said company. After these transactions, H. H. Sears was removed from said guardianship, and in August, 1884, appellee Wallis was appointed guardian of said estate, and brought this suit against the company to recover the value of said stock, etc. Said company impleaded Kempner and H. H. Sears, making them parties to the suit, and praying judgment over against them, in the event judgment was recovered against it, etc. Judgment was rendered in favor of the guardian, against the company, for the value of the stock and interest, and a like judgment, in favor of the company, over against Kempner and Sears, from which judgment Kempner alone appeals.
The company’s answer, impleading Kempner, alleged substantially that H. H. Sears, as guardian aforesaid, together with said Kempner, presented said certificate *517 of stock to said company, and demanded a new certificate to be issued to said Kempner, representing at the time that said Sears, as guardian aforesaid, had transferred said stock to Kempner, and that said Sears had lawful authority to make said transfer; that, believing said representations to be true, and relying thereon, the company canceled the certificate, transferred the stock to Kempner, and issued and delivered to him a new certificate. Appellant demurred to this plea, the objection to it being that it did not allege that Kempner made any representation fraudulently, or that he knew the facts to be otherwise than represented. This demurrer was overruled. Held: In testing the sufficiency of the plea upon general demurrer, its statements are to' be taken as true. Do the facts alleged in the plea show a good cause of action in the company over against Kempner and Sears ? If so, they were proper parties to be impleaded in the suit, and the demurrer was properly overruled. [1 Pomeroy’s Eq. § 114; Sayles & Bassett’s Pl. & Pr. §§ 274, 280.]
§ 585. Misrepresentation; when actionable; plea of, held sufficient. A misrepresentation, in order to constitute actionable fraud, must be an affirmative statement, or affirmation of some material fact, which is untrue, made for the purpose of inducing the other party to act, and upon the faith of which such other party did act to his injury. [2 Pom. Eq. § 876 et seq.] As to the knowledge, belief or intent of the party making the misrepresentation, “it is settled in equity, by an overwhelming array of authority, that where a person makes a statement of fact which is actually untrue, and he has at the time no knowledge whatever of the matter, he is chargeable with fraud, and his claim to have believed in the truth of his statement cannot be regarded as at all material. The definite assertion of something which is untrue, concerning which the party has no knowledge at all, is tantamount in its effects to the assertion of something which the party knows to be untrue.” [2 Pom. *518 Eq. § 887; Mitchell v. Zimmerman, 4 Tex. 75; W. & W. Con. Rep. §§ 2, 3.] It was, therefore, not essential that the plea should have alleged that the misrepresentation was fraudulent, and that Kempner knew the falsity of the statement alleged to have been made; that is, that Sears had lawful authority to transfer said stock. The facts stated in the plea show legal fraud on the part of Kempner, and a cause of action therefor against him, in the event that the company suffered injury thereby. The demurrer to said plea was properly overruled.
§ 586. Liability of company to stockholder for wrongful transfer of slock. No question is made as to the liability of the company to the minor for the value of the stock wrongfully transferred, with interest thereon. Such liability is unquestionable, and the judgment against the company is in accordance with law and the evidence. [Baker v. Wasson, 53 Tex. 150; S. C. 59 Tex. 141; Lowell on Trans, of Stock, § 144.]
§ 587. Liability of purchaser of stock wrongfully transferred to the company. As to Kempner’s liability to the company, the evidence does not establish it. He made no representations to the company, either in person or through his agent, that the transfer to him by Sears was valid and made under lawful authority. All that he did, or said, in relation to the matter, was to present to the company by his agent, the certificate, with Sears’ transfer indorsed thereon, and demand anew certificate therefor. By the company’s regulations, and by the terms of the certificate, the stock could not be-transferred except upon the surrender of the certificate, and a transfer upon the books of the company by the owner of the stock in person or by his attorney. These regulations imposed a duty upon the company, and rendered it liable for all injury caused by a breach of such duty. [Lowell on Trans. of Stock, § 122.] It alone had the power to cancel the old stock and issue the new. It held the stock in trust for the benefit of the true owner [Baker v. Wasson, 53 Tex. 150], and was bound to know who was the true owner. *519 It was bound to know that this stock belonged to a minor, and that under the laws of this state the guardian could not legally transfer it, except under authority of an order of the county court in which said guardianship was pending. It was the duty of the company, and was within its power by the use of reasonable diligence, to ascertain and know that the guardian had legal authority, before sanctioning his transfer of the stock on its books. The means of obtaining this information was at hand within easy reach, and was not within the peculiar knowledge of Kempner, and such being the case, the right of the company to rely and act upon Kempner’s statements, even had he made any as to the validity of the transfer, is questionable. [Ante, § 394.] But no such statements were made by Kempner. If the facts had been as alleged in the company’s plea, that Kempner had represented, falsely, that the transfer was valid,—made bylawful authority, and that under the circumstances the company had the right to rely upon such statements, and did rely and act upon the same, it would be entitled to its action against Kempner. [Lowell on Trans. of Stock, § 147; R. R. Co. v. Richardson, 135 Mass. 473.] But merely presenting the transfer for the action of the company, without making any representation as to its validity, did not amount to an assertion that it was valid, and did not constitute actionable fraud or wrong. [Tel. Co. v. Spurling, 5 Q. B. D. 188.] The judgment against Kempner is not supported by the evidence, and as to him is
February 18, 1885.
[Note.— On motion for a rehearing in the foregoing case, the court was divided in opinion, and two opinions were delivered. As the questions discussed and decided are important, and new in this state, and as there is a conflict of opinion upon them, it is deemed proper to give the two opinions rendered on the motion for rehearing in full.— Be-PORTER.]
Reversed and remanded.
*520 OPINION OP A MAJORITY OP THE COURT, BY
WILLSON, J.
§ 588. Inability of company to stockholder; liability of purchaser of stock to company. A majority of the court adhere to the views expressed in the original opinion. In addition to what is therein said, we will somewhat elaborate the reasons upon which we based our conclusions, and notice the arguments and authorities presented by counsel for the company, on their motion for rehearing.
We assume the following propositions, which we think cannot be successfully controverted: 1. That the company was a trustee for its stockholders. 2. That as such trustee, in this case, it knew that the stock registered on its books in the name of Lizzie Sears, a minor, could not legally be transferred by her guardian without an order of the county court of G-alveston county, authorizing such transfer. 3. It was a violation of this trust — an illegal and wrongful act — for the company to make the transfer in the absence of such an order. 4. By its own regulations it required the transfer to be made upon its books, and the old certificate to be surrendered. It was, therefore, not only its right but its duty to inquire as to the authority of the guardian to make the transfer, and to refuse to make such transfer until such authority was shown to exist. A neglect of this duty rendered the company liable to the stockholder. [Baker v. Wasson, 53 Tex. 150; S. C. 59 Tex. 140; Strange v. R. R. Co. 53 Tex. 162; Bayard v. F. & M. Bank, 52 Penn. St. 232.]
But, it is said, this duty devolving upon the company is confined to its stockholders, and does not, in any manner, affect the question presented in this case, that is, the liability of Kempner, a stranger, between whom and the company and its stockholders no privity existed.
We do not, and did not in the original opinion, assert the proposition that the company was under the same obligations to Kempner that it was under to its stockholders. It was not a trustee for him, but for its stock *521 holders only. But we did, and do still, assert, that as trustee for this stockholder it knew that her guardian could not transfer her stock without proper authority, and that it was the express duty of the company, assumed by its own regulations, to refuse to make the transfer upon its books, and issue new stock, until the guardian’s authority to transfer was produced. Its neglect of duty in this respect was a breach of trust —■ an illegal, wrongful dereliction, which rendered it liable to the stockholder, but not liable to Kempner, for he had not been injured or prejudiced thereby, having purchased and paid for the certificate upon his own judgment, uninfluenced by any act of the company, and before the transfer upon the books was made. But the question in this case is, not as to the company’s liability to Kempner, but vice versa. Kempner is not seeking any relief against the company. He is not seeking to compel the company to transfer the stock to him upon its books, nor to recover damages for making an illegal transfer to him. If such were the suit, we would say that he could not recover, because he had in no way been misled or injured by the company. But the company is seeking to enforce an asserted liability against him. This liability is not claimed because of any deceit, misrepresentation, fraud or wrong, practiced by him upon the company. It exists, if at all, by reason of the fact that he presented the certificate and transfer to the company, and claimed and obtained a transfer on the books of the company, and a new certificate to himself. It is insisted that this was a representation by him to the company, and a warranty on his part, that the transfer made to him by the guardian was in all respects valid. We stated in the original opinion that the mere presentation of the transfer, without any representation as to its validity, did not amount to an assertion that it was valid, citing in support of such statement the case of Tel. Co. v. Spurling [5 Q. B. Div. 188], In that case, Judge Lindley, upon this *522 point, says: “ The question really turns on the effect of the purchaser of stock taking to the company, for the purpose of registration, a transfer supposed to be genuine, but not genuine; and in order to ascertain the effect of that, I must look at the obligations, if any, under which he is to the company, and the obligations, if any, under which the company are to him; and for the purpose of unraveling this part of the case, ... let me first see what the obligations are of a person taking a transfer to the company. Now, does he represent anything more than this: that, so far as he knows, it is a good and valid document ? Is there any authority for saying that he does more than that ? Of course, if he takes a transfer to the company, knowing that something is amiss with it, he must take the consequences of his own knowledge; he cannot fasten any obligation upon the company. But, supposing that he knows nothing wrong about it, are the company entitled to say to him, ‘We assume, from the fact that you bring this transfer to us, that it is a genuine document.’ I apprehend that they are not to say so to him. They are only entitled to say to him: ‘We assume that you came honestly to us, and that you do not know that anything is amiss with regard to the transaction.’ ”
These views of Judge Lindley were not passed upon by the lords justices before whom the case was heard on appeal, and hence it is said by counsel that his opinion upon the point, is not entitled to weight as authority. While the opinion is not fortified by authorities, and is the opinion of only a single judge, still, to our minds, the reasoning upon which it is founded is sound, and it accords with our sense of equity with reference to the facts of the case under consideration. It conflicts with- the doctrine laid down in R. R. Co. v. Richardson, 135 Mass. 473; Hambleton v. R. R. Co. 44 Md. 551; Brown v. Ins. Co. 42 Md. 334, and perhaps other cases; and we are free to concede that the weight of authority is against the rule *523 stated by Judge Lindley and adopted by us. But in our own state the question is a new one, and we feel at liberty to determine between conflicting views, and adopt those which, in our judgment, are the soundest in reason, and most in accordance with public policy and the principles of justice. Now, in the case before us, the company, as before stated, was acting in the capacity of a trustee for its stockholders. It was charged with the duty of protecting those stockholders. It was charged with the duty of knowing that stock transferred upon its books was transferred by the owners thereof in person, or by some one legally authorized to make the transfer for them. It had no right to rely or act upon the representations of any stranger about matters which had been intrusted to it. Public policy, in our opinion, requires a strict enforcement of this duty which the company owes to its stockholders. If the company can, as in this instance, transfer stock, knowing that the transfer is made by a mere trustee, who was without power to make it, and yet hold the transferee responsible for any loss that may accrue to it, by reason of its wrongful act, it will certainly, it seems to us, greatly impair the security of stockholders, and prove a fruitful source of frauds and litigation. It will have the effect to cause the company to rely upon a solvent transferee’s responsibility to it, in case the transfer is invalid, instead of a performance of its duty by inquiring carefully into the validity of the transfer, and satisfying itself thoroughly that it was made by the proper authority. Thus, in this very case, if the company had performed its duty, this litigation would not have occurred, because the wrongful transfer would not have been made. And, it seems to us, that it would not be consonant with justice to permit the company to shield itself from the consequences of its own neglect and violation of duty, by shifting those consequences upon a transferee who has acted in good faith, and who, as is conceded in this case, is innocent of any misrepresentation or wrong.
*524 § 599. Negligence in company to overlook open defect in title; implied warranty does not extend, to such a defect. But the facts of this case do not, in our opinion, bring it within the doctrine of the case of R. R. Co. v. Richardson, supra, and other cases cited in accord therewith. In that case, and others agreeing with it which we have examined, the transfers were forgeries. They were complete transfers upon their faces, made apparently by proper authority. In the case before us the transfer presented to the company was, upon its face, incomplete, imperfect and without authority. It was the transfer of a guardian, unaccompanied by any evidence of his authority to transfer. A most important link in the chain of title, that is, an order of the county court authorizing the transfer, was not presented with the transfer. This defect was patent, and the company was bound to observe it, and to refuse to make the transfer until this link was shown to exist. It might not be held bound to detect a forgery, but certainly it would be required to notice a patent defect in the title such as this. It was gross negligence on the part of the company to overlook or disregard it. Nor can it claim that it was misled by Kempner as to this defect, nor that Kempner warranted against it, because, being an open defect, as apparent to the company as to him, the doctrine of implied warranty, upon which the cases above referred to are based, cannot apply.
§ 600. Equal equities; maxim in such case. But, again, let us concede that both the company and Kempner are wholly free from blame; that each of them acted in good faith; or that, if there was negligence, one was as careless as the other. In such case, what is the rule? It is contained in the maxim, “In cequali jure melior est conditio possidentis: Where the right is equal, the claim of the party in actual possession shall prevail.” [Broom’s Leg. Max. Ilk] Here Kempner was in possession. It was incumbent upon the company, in order to enforce its asserted rights against him, to become the actor —the *525 plaintiff. It is another maxim of the law that the condition of the defendant shall be favored rather than that of the plaintiff. [Id. 714.] Where justice is in equilibrio between the plaintiff and the defendant, the scale must be turned in favor of the defendant. Where both parties are in fault equally, the rule is the same. [Id. 718; 1 Story’s Eq. § 150.]
March 18, 1885.
§ 601. Contribution; joint wrong-doer not entitled to. Again, let it be conceded that it was the joint or concurrent negligence of both the company and Kempner that occasioned the damage to the plaintiff. Unquestionably they were both liable to the plaintiff for the wrongful conversion of her property. They were joint wrongdoers. This was an action ex delicto to recover damages of the company for its tort. It was brought against the company alone. One tort-feasor cannot compel contribution by another. Hence the company had no cause of action against Kempner, who was a joint wrong-doer with it. [1 Hill on Torts, 2; Cooley on Torts, 147; Broom’s Leg. Max. 727.]
Motion refused.