UNITED STATES FIDELITY & GUAR-
ANTY CO. v. RAMEY et al.   (No. 2286.)

(Court of Civil Appeals of Texas.   Amarillo.
March 19, 1924.   Rehearing Denied
April 30, 1924.)

1. **Joint-stock companies and business trusts
8—Stockholder held not negligent so as
to estop him from asserting title to stock
certificate against bona fide purchaser.**

Stockholder signing assignment of certifi-
cate in blank and mailing it to bank to sell it
*held* not negligent, so as to estop him or bank's
fidelity insurer as subrogee from asserting ti-
tle as against bona fide purchaser for value
from bank's employee who stole certificate.

2. **Customs and usages  5—Rule as to non-
negotiability of stock certificate indorsed in
blank for sale held not changed by local cus-
tom.**

Rule of law, such as that as to nonnego-
tiability of stock certificate indorsed in blank
to facilitate sale by assignee cannot be changed
or its application affected by local custom not
so general that any dealer in trade is pre-
sumed to know it, especially where assignor
resides elsewhere and does not know of cus-
tom.

3. **Joint-stock companies and business trusts
8—Bona fide purchaser of new stock cer-
tificate issued to purchaser of stolen cer-
tificate held to take title free of owner's
claim.**

Joint-stock association to which stock cer-
tificate indorsed in blank by way of assignment
is presented for surrender and cancellation
and issuance of new certificate is not negli-
gent in so doing on ascertaining genuineness
of owner's signature, in absence of fraud, col-
lusion, or notice of lack of title in holder, and
bona fide purchaser of new certificate, without
notice that original was stolen, takes title free
of claim by owner.

Appeal from District Court, Wichita Coun-
ty;  H. R. Wilson, Judge.

Suit by the United States Fidelity & Guar-
anty Company against Charles C. Ramey and
others.  Judgment for defendants, and plain-
tiff appeals.  Affirmed.

Bonner, Bonner & Sanford, of Wichita
Falls, for appellant.

Mathis & Caldwell, of Wichita Falls, for
appellees.

RANDOLPH, J.  This suit was brought by
appellant against Chas. C. Ramey, J. L. Sim-
mons, A. Q. Bonner, S. W. Sibley, T. J. Tay-
lor, S. W. Sibley, and T. J. Taylor, copart-
ners doing business as Sibley & Taylor, J. A.
Kemp, and Kemp-Munger-Allen Oil Company,
a joint-stock association, to recover the sum
of $2,800 alleged to be due it from said de-
fendants.

The following statement of the case is tak-
en in part from appellant's brief as being
substantially correct:

During the latter part of the year 1919 one
Rube S. Beard, of Plainview, Tex., was the
owner of a share of stock in the Kemp-
Munger-Allen Oil Company, which he sent to
the First National Bank of Wichita Falls,
Tex., to be held by said bank and sold, if
possible, for $2,500.  He signed in blank the
assignment and power of attorney to transfer
printed on the back thereof, so as to facili-
tate its sale by the bank.  The bank, through
its vice president, C. E. McCutcheon, placed
said certificate in its vault for safe-keeping.
Beard wrote for it in May, 1920, and a
search of the bank's vaults disclosed that it
had disappeared, and it developed that it had
been stolen from the bank's vault by one
Cecil James.  Cecil James was an employee
of the bank, but was not authorized to have
anything to do with this stock certificate,
and his access to it was gained fraudulently
and without the knowledge of any of the
officers of the bank, or of any agent of the
bank authorized to have the certificate.
James had stolen the certificate some time
prior to January 8, 1920, and had sold it
and appropriated the proceeds.  It was sold,
first to one Chas. C. Ramey, who took the
certificate to the office of the Kemp-Munger-
Allen Oil Company and had it canceled and
a new certificate issued to him for this share
of stock on or about January 8, 1920.  By
subsequent transfers Ramey transferred to
L. J. Simmons; L. J. Simmons transferred
to S. W. Sibley;  S. W. Sibley transferred it
to the copartnership of Sibley-Taylor;  and
Sibley-Taylor transferred it to J. A. Kemp;
all of said transfers taking place prior to
the 11th day of May, 1920, and each of said
transferees procured the Kemp-Munger-Allen
Oil Company to issue to him in turn a new
certificate, representing said share of stock.
All of these transfers were made and certifi-
cates issued prior to the discovery of the
theft, and both Beard and the bank sup-
posed that the certificate was in the bank's
vault.  When the theft was discovered the
bank, being obligated to Beard for the safe-
keeping of the certificate, purchased for him
a new certificate in the open market, pay-
ing therefor $2,500, and also paid him the
$300 dividend which had been declared be-
tween the time Beard sent the certificate to
the bank and the discovery of the theft.  The
bank was insured against loss by theft of its
employees in the United States Fidelity &
Guaranty Company, and, the theft of this
certificate being one of the matters insured
against, the United States Fidelity & Guar-
anty Company paid the bank the sum of $2,-
500, and brought this suit under the principle
of subrogation to enforce the rights that
Rube S. Beard had in the stock at the time
of the repayment to him by the bank of his
loss.

The defendants alleged that they were each
of them innocent purchasers of the stock for

value in due course, and had no notice that the certificate had been stolen, nor of any claim of Rube S. Beard; that Rube S. Beard had sold and disposed of his stock by proper indorsement, and that the certificate issued to him had been turned back to the company, and a new certificate issued in its place, long prior to their purchase of the stock; that Rube S. Beard had indorsed the stock in blank and sent it to the First National Bank of Wichita Falls to be sold by said bank, and thereby clothed the bank, its agents, servants, and employees, with apparent authority to sell the stock, whereby he was estopped from claiming it as his own against the defendants who purchased it in good faith and for value thereafter. Defendants further pleaded that a custom existed in Wichita Falls during the time the certificate was being sold and transferred for such certificates indorsed in blank to pass from hand to hand without having the same transferred on the books of the company and without inquiry as to the validity of the stock, and that by said custom in Wichita Falls stock certificates were made negotiable in character and transferable on delivery when so indorsed in blank.

Rube S. Beard having ordered the sale of the stock to be made by the bank at the sum of $2,500 and the bank paid that sum for a share of the stock in the open market, plus the dividends, $300, the United States Fidelity & Guaranty Company having, under the terms of its insurance, paid to the bank that sum of money, claims it is entitled to recover it from the defendants. It appears that the highest market price for stock was the sum of $2,900 between the period which said bank held it and the time of the discovery of its loss.

Appellant submits to us two propositions of error, alleged to have been committed by the trial court, which present only one question for review. The court held that—

"By reason of having placed upon said certificate his genuine signature to the assignment in blank thereof, and having sent the same to the First National Bank of Wichita Falls with said .assignment in blank thereof, said Rube S. Beard and the plaintiff, United States Fidelity & Guaranty Company, are estopped from claiming that the transfer of said certificate by said Cecil James and the several defendants did not ,pass good title thereto and are estopped from claiming that the defendants, or any of them, converted said stock."

The certificate as sent to the bank by Beard, the assignment of which was in blank, signed by Beard, is as follows:

"Capital $50,000.00—Par $100.00.
"No. 33. One Share.
"Kemp-Munger-Allen Oil Company.
"Trustee's Certificate of Beneficial Interest.
"The undersigned as trustee under a certain agreement and declaration of trust, en-tered into between him and H. M. Munger et al. on the 15th day of January, A. D. 1919, said agreement being recorded in the Deed Records of Wichita County, Tex., to which reference is here made, does hereby certify that Rube S. Beard is the owner of one share of the beneficial interest therein specifically described, the total number of shares now issued and outstanding being five hundred.

"This certificate is transferrable only upon the books of the trustee in person or by attorney and upon the surrender of this certificate. This certificate shall not be valid until countersigned by the secretary of the company.

"In testimony whereof, the trustee named in said declaration of trust has signed this certificate this the January 25th, 1919, day of ——, A. D. 1919.

"[Signed] J. A. Kemp, Trustee.
"Countersigned this the Jan. 25, 1919, day of ——, A. D. 1919.

"[Signed] C. Y. Tully, Secretary.
"For value received —— does hereby sell and transfer unto —— shares of beneficial interest in Kemp-Munger-Allen Oil Company represented by the within certificate, and does hereby irrevocably constitute and appoint the Secretary as attorney in fact to transfer the said shares on the books of the within named company with full power of substitution in the premises.

"Witness my hand this the —— day of ——, A. D. 19—. [Signed] Rube S. Beard.
"Witness: C. ·D. 'Hensby."

It was shown that it was customary in the oil field to transfer such certificate from hand to hand without noting such transfers on the stock book of the association, but it was also shown by Beard that he had no knowledge of such custom, he residing at Plainview at the time he signed such assignment and sent it to the bank. The court found that the bank was not negligent in the manner in which it deposited said certificate in its vault for safe-keeping, and that all of the purchasers of the certificates were without notice of the theft of same by James and paid value for same.

[1] The trial court evidently based its judgment in favor of the defendants upon its finding that Beard signed the blank assignment and mailed it to the bank for sale; that Beard and the plaintiff were estopped thereby from denying that defendants did not have title to said certificate. This necessarily involved a finding that Beard was guilty of negligence in one of two particulars: Either in his signing the same in blank, or in mailing same to the bank—thus making it possible for James to transfer it by delivery after he had stolen it. Beard testified that he signed it in blank and sent it in that condition to the bank to fill in the name of the possible purchaser when they sold it. It has never been held, so far as we have been able to discover from a search of the authorities, that mere signing an assignment of a certificate in blank and delivering it to an agent or attorney in fact was negligence. Beard

mailed the certificate to the bank to have it sell it for him. This occurs to us to be an ordinary business method of transacting business, and his signing it in blank for the purpose which he indicates also occurs to us as being such method as an ordinarily prudent business man would have employed.

The appellee cites the case of Strange v. H. & T. C. Ry. Co., 53 Tex. 170. We do not think the holding in that case is authoritative in this: For the reason that in that case the agent, Fletcher, was vested with all the indicia of ownership—he was given full authority to sell and dispose of the stock, and the fact that he had disposed of it wrongfully was held to convey title to it—that the rights of Strange do not depend upon the actual title or authority of Fletcher to sell, but upon the act of Browder giving the apparent authority to sell which would estop a recovery.

As stated, in the Strange Case the apparent and actual authority was given to Fletcher to sell, and the fact that he breached his trust was not permitted to be set up to the injury of an innocent purchaser for value. When Beard sent the certificate and the signed indorsement in blank to the bank, if the bank had violated its trust and made a wrongful sale, certainly Beard and the plaintiff would be estopped. But when the certificate reached the bank and was safely deposited in its vault we do not concede that the act of a thief in taking it from the vault and transferring it to a purchaser for value, however innocent the purchaser, could vest title in that purchaser. In other words, such purchasers do not become innocent purchasers for value without notice so as to enable them to recover, regardless of how the certificate came into James' hands. It has been held that the fact that the stock has been indorsed in blank by the owner does not estop him from asserting title thereto as against a bona fide purchaser for value who derives title from one who stole the certificate from the pledgee. The rule that the real owner is protected when the certificate is stolen is not based upon the name of the agent's crime, but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document, and therefore is not considered to have done enough to be estopped as against the purchaser in good faith. And this is carried further in holding that a party leaving a certificate of stock indorsed in blank in a safety deposit box, used by himself and another, is not estopped from asserting his title to it when it was stolen and sold by the other, quoting from 6 Fletcher, Cyc. Corps. §§ 3853, 6483, 6484.

Mr. Cook, in his work on Corporations (volume 2, § 358), states the general rule as follows:

"One of the most important elements of the negotiability of promissory notes is that, if the holder of such note loses it, or it is stolen from him, when it is indorsed in blank, a subsequent bona fide purchaser of such note is protected as against the person who lost it. A different rule seems to prevail as regards certificates of stock indorsed in blank and then lost or stolen. In this respect certificates of stock are not negotiable. It has been clearly held that a purchaser from a thief of certificates of stock, indorsed in blank, is not protected, nor is any subsequent purchaser of that identical certificate allowed to claim the stock, unless the owner has been guilty of negligence."

In the case of Scollans v. Rollins, 173 Mass. 278, 53 N. E. 863, 73 Am. St. Rep. 286, it is said:

"Under our decisions the property of the true owner of documents of the nature of those now in question is not divested by a sale to a purchaser, in good faith and for value, from one who has got them feloniously from the true owner, nor by any subsequent dealing of such a purchaser with the documents, but the property remains with the true owner from whom they were feloniously taken. The real ownership in such documents follows the general rule as to the ownership of chattels, the only exception to which is as to property which consists of the currency of the country or securities which by the law merchant are negotiable."

The court in that case, upon the above proposition, cites many cases supporting the rule laid down by it. This rule we apply only to the purchaser of the original certificate, for reasons stated below. See, also, Anderson v. Nicholas, 28 N. Y. 600; Farmers' Bank v. Diebold Safe & Lock Co., 66 Ohio St. 367, 64 N. E. 518, 58 L. R. A. 620, 90 Am. St. Rep. 586; Schumacher v. Greene Cananea Copper Co., 117 Minn. 124, 134 N. W. 510, 38 L. R. A. (N. S.) 180, Ann. Cas. 1913C, 1115; O'Herron v. Gray, 168 Mass. 573, 47 N. E. 429, 40 L. R. A. 498, 60 Am. St. Rep. 411.

[2] With reference to the defense of local custom, we cannot concede that this custom would change the rule of law as to the nonnegotiability of this instrument. Especially is this true where the party resides away from the particular locality, and is shown not to have known of the custom. A rule of law cannot be changed or its application affected by any local custom. Meaher v. Lufkin, 21 Tex. 383; Weinsteine v. Harrison, 66 Tex. 546, 1 S. W. 626. But it must further appear, in order that any local custom shall affect the contractual rights, that custom must be general—so general that any one dealing in that trade is presumed to know it. Schumacher v. Trent, 18 Tex. Civ. App. 17, 44 S. W. 460.

[3] Appellee contends that as to those subsequent purchasers who purchased the reissued certificates, and who were purchasers for value without notice, they take title to the certificates so purchased by them, and

also that in the absence of fraud or collusion on the part of the joint-stock association the mere transfer by it on its books to a purchaser under the direction of the seller does not make the association liable in damages.

The liability of the association is not determined by the principle involved in the discussion of the liability of a purchaser or of the original stolen certificate. The duty of the purchaser who is purchasing a nonnegotiable certificate, and who receives a certificate of stock from the hands of a party who is not identified by its terms as the owner, and who does not appear on the stock book of the association to be the owner, is not the duty of the association. When a certificate is presented to the association for surrender and cancellation for the purpose of having a new certificate issued, and such certificate so presented has the signature of the owner thereof indorsed in blank on it, by way of assignment the only duty the association owes to such owner is to verify his signature —that is, to ascertain the genuineness of the signature. But there is the duty to accept the surrender of the certificate, cancel same, and at the demand of the holder issue a new certificate in lieu thereof where it is authorized, as in this case, by the genuine signature of the owner. This we think was the duty of the association to recognize and obey the order given by the owner, and there was no degree of negligence in its thus acting, in the absence of fraud or collusion on the part of such association, where the association is without notice of any lack of title in the holder, and no liability arises against such association by reason of the acceptance of such assignment, the cancellation of the original certificate, and the issuing of the new certificate. The liability of the association only arises where it fails to exercise reasonable care and diligence in protecting the true owner. 14 C. J. 772, §§ 1174, 1175; 6 Fletcher, Cyc. Corps. § 3844; Baker v. Wasson, 53 Tex. 150.

It naturally follows that a bona fide purchaser for value, who purchases such new certificate without any notice of the fact that the original had been stolen from the owner, would, by this interposition of the association, also be protected, and such purchaser would take title free of any claim by the owner. 14 C. J. p. 774, also part of section 1175; Baker v Wasson, 53 Tex. 150; Winter v. Montgomery Gas·Co., 89 Ala. 544, 7 South. 773; Tafft v. Presidio & F. R. Co., 84 Cal. 131, 24 Pac. 436, 11 L. R. A. 125, 18 Am. St. Rep. 166.

It appearing that plaintiff in the trial court dismissed its suit against defendant C. C. Ramey, the only purchaser of the original certificate, and that the trial court rendered a proper judgment against the plaintiff, the judgment of the trial court is therefore affirmed.