## SACKENREUTHER v. WINSTON et al.

### No. 10903.

Court of Civil Appeals of Texas. Galveston.

Jan. 11, 1940.

Rehearing Denied Feb. 29, 1940.

Fulbright, Crooker & Freeman, of Houston (C. A. Leddy and Nowlin Randolph, both of Houston, of counsel), for appellant.

Lewis W. Cutrer, of Houston, for appellees Bert Winston and Carroll Sterling Winston.

MONTEITH, Chief Justice.

This is an appeal in an action brought by appellant, P. G. Sackenreuther, against appellees, Bert Winston and wife, Carroll Sterling Winston, and Reed Roller Bit Company, to recover the title to and possession of 200 shares of stock of the Reed Roller Bit Company.

Appellant alleged that he had placed an order for the purchase on margin of stock in various companies with the brokerage firm of Sterling & Baker, and that he had deposited with them sums of money and other certificates of stock as collateral in connection with such purchases, but that Sterling & Baker did not buy for him the stock ordered through them; that on the request of Sterling & Baker for additional margin he had placed with said firm two certificates of stock, each evidencing his ownership of 100 shares of the capital stock of the Reed Roller Bit Company, and had instructed them to sell 100 shares of said stock on October 27, 1937, and the other 100 shares of said stock on October 29, 1937. Appellant alleged that appellee, Mrs. Carroll Sterling Winston, acting through her father, F. P. Sterling, had instructed Sterling & Baker to purchase for her 200 shares of Reed Roller Bit Company stock, and that said stock was purchased for her on October 6, 1937, for the sum of $6,230, but that on or about October 28, 1937, Sterling & Baker had taken and appropriated the two certificates of the Roller Bit Company stock belonging to appellant and caused same to be transferred on the books of appellee Reed Roller Bit Company into the name of Mrs. Carroll Sterling Winston. Appellant sought judgment directing appellee, Reed Roller Bit Company, to cancel the certificates of stock issued to appellee, Mrs. Carroll Sterling Winston, and to issue a certificate evidencing the ownership of said stock in appellant, for title and possession of said stock, and for all dividends declared thereon since October 28, 1937.

Appellees, Bert Winston and Carroll Sterling Winston, answered by special exceptions, a general demurrer, and a general denial. By special answer they alleged that on or about October 5, 1937, they had placed an order with Sterling & Baker to purchase 200 shares of the common stock of Reed Roller Bit Company for Mrs. Winston; that on October 6, 1937, she paid Sterling & Baker the sum of $6,230 for said stock, and that 200 shares of said stock was issued in the name of Mrs. Carroll Sterling Winston and delivered to her on October 29, 1937.

Appellee Reed Roller Bit Company answered by general demurrer and general denial and by special plea alleged that it had acted, in the transfer of said certificates of stock, in the regular course and conduct of its business without notice or knowledge of any irregularities or conflicting interests in the ownership or transfer of said stock.

No fraud or conspiracy on the part of the appellees in the purchase or transfer of said stock is alleged by appellant, and there is no pleading or evidence that appellees, Winston, had any knowledge that the stock delivered to them had formerly

belonged to appellant, or that it had been deposited by him as collateral.

The jury, in answer to special issues submitted, found: That appellant unconditionally assigned and delivered to Sterling & Baker two certificates of Reed Roller Bit Company stock; that neither such act of appellant nor his failure to have the assignment and endorsement of his stock certificate contain the reservations, exceptions, and limitations under which said stock was signed and delivered to Sterling & Baker was negligence; that appellee, Mrs. Winston, at the time the stock was delivered to her had no knowledge of any infirmity in the title thereto, and that she was a bona fide purchaser of said stock.

Based on these findings of the jury, judgment was rendered in favor of appellees and that appellant take nothing by his suit.

It was stipulated by the parties that on October 29, 1937, there was outstanding on the books of the Reed Roller Bit Company in the name of appellant stock certificates Nos. CA–1433 and CA–1434, each representing 100 shares of common stock of said company; that on said date, in the regular course of business, the Reed Roller Bit Company received said two certificates by registered mail from Sterling & Baker, with written instructions to transfer them from the name of appellant to the name of Mrs. Carroll Sterling Winston; that attached to each of said certificates was affixed the following writing signed by appellant:

"Sterling & Baker, Brokers "Houston, Texas.

"For value received, ———————— hereby sell, assign and transfer unto ——————— (100) shares of the ——————— capital stock of the Reed Roller Bit Company standing in ———————— name on the books of said ——————— represented by Certificate No. CA-1433 herewith and do hereby irrevocably constitute and appoint ———————— attorney to transfer the said stock on the books of the within named Company, with full power to substitution in the premises.

"Dated ————————————
            "Paul G. Sackenreuther (Signed)
            "Paul G. Sackenreuther
"In the presence of
"B. F. Sterling (Signed)
            "Signature Guaranteed
            "Sterling & Baker (Signed)."

That in accordance with said instructions Reed Roller Bit Company, on October 29, 1937, cancelled and annulled said two certificates and in lieu thereof issued certificates Nos. CA–4101 and CA–4102, each representing 100 shares of the common stock of such corporation, in the name of Mrs. Carroll Sterling Winston, and forwarded said new certificates of stock to Sterling & Baker and that they were received by Sterling & Baker, on or about October 29, 1937.

The record shows that the firm of Sterling & Baker was engaged in the brokerage business in Houston and the surrounding territory. The firm was adjudged bankrupt on November 2, 1939.

On October 5, 1937, appellee Mrs. Carroll Sterling Winston, through her father, F. P. Sterling, instructed Sterling & Baker to purchase for her 200 shares of Reed Roller Bit Company stock, and an order was placed by them with the firm of Post & Flagg for the purchase of said stock at $31 per share; she was notified that said stock had been purchased for her, and on October 7, 1937, a check for $6,-230 was delivered to Sterling & Baker covering said purchase. On October 29, 1937, said stock was delivered to her by Sterling & Baker.

The records of Sterling & Baker show that the first 100 shares of Reed Roller Bit Company stock was deposited with them by appellant as collateral on October 10, 1937; that at that time appellant was indebted to them in the sum of $1,-964.13; that on October 20, 1937, the second certificate of stock was deposited by appellant with them as collateral and that at that time appellant was indebted to them in the sum of $4,866.76; that on October 28, 1937, 100 shares of Reed Roller Bit Stock in the name of appellant were sold at $27 per share, amounting to the sum of $2,675.94, and that appellant was given credit for that amount, making a balance debt of $2,201.08.

On October 27, 1937, appellant instructed Sterling & Baker to sell 100 shares of said stock and on October 29, 1937, he instructed them to sell the other 100 shares of said stock held by them. On October 28, 1937, both of said certificates of stock were sent to Reed Roller Bit Company by Sterling & Baker with instructions that they be transferred to appellee, Mrs. Winston.

Mrs. Curtis Green, a former employee of Sterling & Baker, testified that none of the stock ordered by appellant to be purchased by Sterling & Baker on mar-

gin was purchased in appellant's name, but that with the exception of 50 shares of Navarro Oil Company stock, the stock ordered by appellant was on hand at the date Sterling & Baker was declared bankrupt. The witness testified that it was customary with said firm that when a customer placed an order for stock to be bought "on margin" that said stock was not put in the customer's name, but was bought for the account of Sterling & Baker, or the Sterling & Baker Securities Corporation, and that said stock remained in the name of said company until it was paid for by the customer and ordered out in his name.

It was proven that in the handling of stock transactions "on margin" the regulations required that the customer deposit 40% of the cost of said stock, and that the remainder was financed in New York for his account for which an interest charge was made each month, and that he was required to maintain a balance of 40% at all times; that when a customer purchased stock "on margin" said stock was not transferred to the name of the individual customer until it was paid for in full, but was taken in the name of the broker, otherwise the broker could not use the stock as collateral in the money market of New York; that if the price of stock went below the amount required, the broker was governed under SEC rules and the New York stock exchange and was required to keep accounts margined to a certain point, and in the event the given stock sold below that point it was customary for the broker to call upon the customer to reduce his debt balance by cash deposit or additional collateral; that it is not customary for the broker to have stock transferred to the purchasing customer's name until he paid for it outright.

Appellant testified that all of the stock ordered by him through Sterling & Baker was bought on margin: that he had never made demand for any of said stock, except 50 shares of Navarro Oil Company stock, and that this was the only stock that he had received from them.

Appellant contends that, since his two certificates of stock were non-negotiable, the title thereto could have passed into appellee, Mrs. Winston, only by estoppel by reason of his negligence, and that, the jury having found that he was not guilty of negligence in delivering and assigning said stock to Sterling & Baker, the court erred in rendering judgment in favor of appellees.

Appellant bases this contention to a large extent on the cases of Phillips v. Citizens' Nat'l Bank et al., Tex.Com.App., 15 S.W. 2d 550, and State Trust & Savings Bank v. Mayes, Tex.Civ.App., 67 S.W.2d 419. We think that the facts in the two cases above referred to are clearly distinguishable from those in the instant case.

The case of Phillips v. Citizens' Nat'l Bank, supra, involved a stock certificate issued in the name of C. W. Wilson and by him pledged to T. C. Phillips to secure a loan. Phillips lost the stock certificate and a stranger found it and returned it to Wilson, who thereafter pledged it to the Citizens' National Bank to secure another loan. The court held that there was no evidence showing negligence on the part of Phillips, but that it was the result of an accident and that the right of the purchaser of a lost certificate to recover as against the original owner thereof on the ground of negligence is not based on the passing of the legal title to the certificate but on the estoppel of the owner to assert his legal title thereto. In its opinion the court further says [15 S.W.2d 552]: "In view of the fact that certificates of stock, when indorsed in blank, are transferable by mere delivery, they are frequently referred to as quasi negotiable. But in such cases the transfer of the title is really upon the principle of estoppel. 14 C.J. p. 665. Thus where an owner of such certificate trusts it to another for a particular use and that other exceeds his actual authority and transfers the certificate to an innocent purchaser for value, the latter may successfully hold the same as against the real owner through estoppel."

In the case of State Trust & Savings Bank v. Mayes, supra, also relied upon by appellants, defendant in error, Mary E. Mayes, pledged four certificates of stock as security for a loan. She executed and delivered to the lender, Kramer Security Company, an ordinary assignment of said stock as collateral and also endorsed said certificates in blank. Later the Kramer Securities Company pledged said stock certificates, with no other endorsements thereon, to the State Trust & Savings Bank as security for a loan. Mary E. Mayes learned that the bank was in possession of her stock before the maturity of said note and made demand therefor,

tendering the amount due on her loan. The bank declined the tender. The court in its opinion held that the pledgee of stock certificates, endorsed in blank by pledgor, did not have title to the stock and could not vest transferee with title thereto unless the pledgor was guilty of such negligence in the handling of said stock as would estop her from enforcing ownership as against an innocent third party.

In the instant case appellant endorsed the two certificates of stock in question in blank and delivered them to Sterling & Baker, who were not pledgees but were agents of appellant, selected by him to purchase stock for his account, with authority to sell said stock in the event his account with them should require additional margin. Upon being informed that his account required additional margin, he subsequently authorized them to sell both of said certificates of stock.

It is uncontroverted that appellee, Mrs. Winston, was an innocent purchaser of 200 shares of stock of the Reed Roller Bit Company; that said stock was transferred into her name prior to its delivery to her; that she paid the full value therefor, and that she had no knowledge or notice at the time of its purchase or of its delivery of any connection of appellant with the stock delivered to her, or of any irregularity or conflicting interests in its ownership or transfer.

■ Our courts have uniformly held that where one of two persons, equally entitled to consideration, as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who, having readily at hand the means of protection, has failed to avail himself of them. Parma v. First Nat'l Bank of Cameron, Tex. Com.App., 63 S.W.2d 692.

The case of United States Fidelity & Guaranty Co. v. Ramey et al., Tex.Civ. App., 261 S.W. 503, 506, involved the theft and sale of a certificate of stock by an employee of a bank to which the stock had been sent for sale. The purchaser of said stock had the certificate cancelled and a new certificate issued to him and subsequently transferred it to the defendants, who were sued for the title and possession of the stock. The court held that "* * * a bona fide purchaser for value, who purchases such new certificate without any notice of the fact that the original had been stolen from the owner, would, by this interposition of the association, also be protected, and such purchaser would take title free of any claim by the owner. 14 C.J. p. 774, also part of section 1175; Baker v. Wasson, 53 Tex. 150; Winter v. Montgomery Gas Co., 89 Ala. 544, 7 So. 773; Tafft v. Presidio & F. R. Co., 84 Cal. 131, 24 P. 436, 11 L.R.A. 125, 18 Am.St. Rep. 166."

■ The following rule is laid down in 37 Tex.Jur., paragraph 221, page 489: "While a bona fide purchaser of goods from a person who is neither the owner nor an agent authorized by the owner to sell them ordinarily gets no title, there are certain situations in which the settled principles of equity preclude the true owner from asserting his rights to them. Thus 'where the real owner, by some act or conduct of his, vests the possession and right to personal property apparently in the seller, he thereby estops himself from setting up a claim to them as against a purchaser for value without notice.' "

■ Applying the above authorities to the facts in the instant case, we think that appellee, Mrs. Winston, having purchased said re-issued certificates of stock for their full value without notice of appellant's equities therein, was entitled to their title and possession.

We have fully considered each and all of the other propositions presented in appellant's brief. In our opinion, none of them show any error in the record which requires a reversal of the judgment. The judgment of the trial court is in all things affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

We have carefully considered appellant's motion for a rehearing and for additional findings in this cause. In connection therewith, and in response to appellant's request, we make the following correction in the findings of fact in our original opinion wherein we stated that, "Mrs. Curtis Green, a former employee of Sterling & Baker, testified that none of the stock ordered by the appellant to be purchased by Sterling & Baker on margin was purchased in appellant's name, but that, with the exception of 50 shares of Navarro Oil Company stock, the stock ordered by appellant was on hand at the date Sterling & Baker was declared bankrupt."

We correct the above statement in this respect: "Mrs. Curtis Green, a former

employee of Sterling & Baker, testified that none of the stock ordered by appellant to be purchased by Sterling & Baker on margin was purchased in appellant's name. In many instances the stock was not purchased by Sterling & Baker at the time it was ordered by appellant, but, with the exception of 50 shares of stock in the Navarro Oil Company, similar stock to that ordered by appellant was on hand at the date Sterling & Baker was declared bankrupt."

This correction in no way affects the final determination of this cause as embodied in our former opinion.

Motion for a rehearing is refused.

Refused.