## Biddle *versus* Bayard.

The bare fact of the loss of a certificate indorsed in blank, is not evidence of such culpable carelessness, on the part of the holder, as would enable the finder to transfer the ownership of it.

If the holder has been as careful of it as reasonable convenience allows, and as a man of common prudence is of his property, it is sufficient.

He is not bound to fill up the blank endorsement by making it payable to his own order, in anticipation of its loss, in order to prevent it from being transferable by the finder.

When a principle of general convenience compels one, of two innocent men, to suffer loss, the rule is *Prior in tempore, potior in jure.*

Error to the District Court of the city and county of *Philadelphia.*

This was an action of trover brought by C. P. Bayard against Thomas Biddle & Co. Judgment below was rendered on the following special verdict:

"And now, May 23d, A. D., 1848, a jury being called, find the following special verdict: "That the plaintiff was the owner of a certificate issued by the Auditor General, No. 229, (prout certified copy thereof,) and casually lost the same on or before the 12th day of September, A. D. 1843. That notice of said loss was given by public advertisement in the North American and Public Ledger, two daily newspapers published in the city of Philadelphia, and that sufficient notice of said loss was also specially given by the plaintiff to defendants. That subsequently to said notice, the defendants bought the said certificate from Shultz & Dock, brokers of the city of Philadelphia, for a full and valuable consideration. That the purchase so made by defendants was made by them as brokers for Richard Willing—the amount paid charged to him and paid by him—that within a short time after the said purchase, the defendants, acting on behalf of the said Richard Willing, delivered the said certificate to the State treasurer, in payment of bank stock sold by the commissioners of the commonwealth to the said Richard Willing, under the provisions of the act of assembly, of April 6th, 1843, entitled "an act to provide for the payment of the domestic creditors of this commonwealth, sale of state stocks, and for other purposes." That the said defendants received from the said Richard Willing, a brokerage of ¼ of one per cent. That Shultz & Dock, from whom the defendants bought the said certificate, had themselves received the same for a valuable consideration in the usual course of business, in good faith, without knowledge or notice of the loss thereof by the plaintiff. That the said defendants having thus become possessed of the said certificate as the agents and brokers of the said Richard Willing, converted the same to the use of the said Richard Will-

[Biddle *v.* Bayard.]

ing, their principal, and that subsequently, to wit: on the 5th of November, 1845, the plaintiff demanded the said certificate of the defendants, to which the defendants replied on the 15th of November, 1845, refusing to accede to said demand, and without giving notice that they had acted as agents for Richard Willing.

But whether or not, upon the whole matter aforesaid, by the jurors aforesaid in form aforesaid found, the defendants are guilty, the jurors aforesaid are altogether ignorant, and therefore pray the advice of the court thereon.    And if upon the whole matter it shall seem to the court that the defendants are guilty, then the jury find for the plaintiff, and assess the damages at three hundred and twenty-three dollars ($323 36) and thirty-six cents.    But if upon the whole matter it shall seem to the court that the defendants are not guilty, then the jurors aforesaid find for the defendants."

The certificate in question was one for $404$\frac{19}{100}$ issued under a resolution relative to the payment of interest to domestic creditors, approved the 7th April, 1842.    It acknowledged the amount above stated to be due to Gore Kingsbury and others, bearing interest at six per cent. per annum, &c.    Endorsed Gore Kingsbury, Kinney & McMahon, by John McMahon. S. & D.

*J. W. Biddle*, for plaintiffs in error, argued that such certificate by the legislature are assignable, *P. L.* p. 183, sec. 7; that the loss of the certificate having been through the plaintiff's carelessness, it was right that the loss should fall on him and not on another who was innocent; that he should have endorsed it payable to his order; and cited 9 *Watts* 350; 2 *Term. Rep.* per *Ashhurst, J.*, p. 71, and *Buller, J.*, p. 73; 7 *Taunton* 265; 2 *Maule & S.* p. 90–91; 4 *Bing.* 253; 4 *Barn & Al.* p. 6–7; Opinion of *Best, J.*, 3 *Barn. & Cress.* 45; 4 *Barn. & Al.* 1; 13 *Mass. Rep.* 105; 15 *Mass. R.* 389.

*Bayard*, for defendant in error, contended that the only chattels not embraced in the general rule, that the owner of a chattel does not lose his *right* of property by the loss of the chattel itself, were, *money* and negotiable or mercantile instruments—such as are to be used as *currency* in the place of money; which the certificate, for the conversion of which this action was brought, was not; and cited 13 *S. & R.* 311; 5 *Whart.* 325; 6 *W. & S.* 227; 13 *East.* 509; *Chitty on Bills*, (10 Am. Ed.) 526; 7 *Taunton* 265, (2 *E. C. L. Rep.* 98); 4 *Barn. & Ald.* (6 *E. C. L. Rep.* 323); and also that the legislature, though sanctioning the sale and transfer of these certificates, had not intended, and was not constitutionally able to make them negotiable and a part of the *currency* of the country.

[Biddle *v.* Bayard.]

The opinion of the court was delivered by

GIBSON, C. J.—It is not pretended that a finder of a bill or note payable to bearer, could transfer the ownership of it, unless there had been culpable carelessness on the part of the loser. It is not easy to determine what would be such; but the bare fact of loss would not be evidence of it. No man is bound to watch his property more anxiously than a man of common prudence does; and he is bound to use no more diligence in keeping it than is compatible with reasonable convenience. Any other measure would enable the possessor of a horse stolen from a common, or a meadow, to make title to it; which, as every one knows, is not the law. The reason is that it would be intolerably oppressive to compel an owner to keep his chattels under lock and key. When the rule of general convenience occasions a loss, that must fall on one of two innocent men, which of them is to bear it? Certainly not he who had the legal title from the first, and who has done no act to divest it for the benefit of another not more innocent or deserving. *Prior in tempore, potior in jure.* The law leaves the parties and the title where it found them. What is the carelessness that is imputed to the loser in this instance? It is said that as the paper was negotiable, by an act of the legislature, he ought to have filled up the blank endorsement by making the contents payable to his own order, in anticipation of what actually happened. The rule attempted to be applied would equally compel a man to lock his stable door; for, the owner of the paper had no more reason to think that he was going to lose it, than a man has to think his horse is going to be stolen. He was not bound therefore to take any measure of special precaution in respect to it.— Besides, it might not have suited his convenience to incur the responsibility of an endorser, by putting his name on the paper; and he was not bound to do it. The case is therefore with the defendant in error.

Judgment affirmed.