## No. 5597.

## THOMAS C. EDWARDS AND WIFE *v.* SARAH BROWN.

1. HUSBAND AND WIFE — COMMUNITY PROPERTY. — In Texas the interests of the husband and wife are equal in all property, both real and personal, acquired during the continuance of the marriage relation, except that acquired by gift, devise or descent, and the increase of lands thus acquired, and this whether the deed thereto be taken in the name of either, or the names of both.

5. OBITER DICTA—CASE REVIEWED.—That portion of the opinion in Garner v. Thompson, Texas Law Review, May, 1883, which was decided by the Commissioners of Appeals, which declares that the purchaser must take notice of the title papers of the land he purchases, our marital rights laws, the existence of the vendor's family, and their rights to the land, was not called for in the decision of the case where there was nothing in the conveyance to show that the grantor was at the time of the sale a married man, and must be regarded as obiter dicta.

3. COMMUNITY PROPERTY — MARITAL RIGHTS. — If title to property be in the name of the husband alone, a purchaser from him who has paid value without actual notice of the wife's interest, will be protected against her claim or the claim of her heirs.

### ON MOTION FOR REHEARING.

4. While the third section of the act of 1848 (Paschal's Digest, art. 4642), defined what shall be community property, it did not regulate the form of conveyance which should be necessary to vest title. Property conveyed either to husband or wife during the matrimonial union may be shown to be the separate property of either spouse by satisfactory evidence that it was paid for with separate funds.

5. CASES REVIEWED.—Yancy v. Batte, 48 Texas, 46; Johnson v. Harrison, 48 Texas, 257; Tieman v. Robson, 52 Texas, 411, and Zimpelman v. Robb, 53 Texas, 274, reviewed.

6. REGISTRATION ACTS.—The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable, and registration acts protect innocent purchasers as fully against the legal title as against an equitable claim.

7. SAME—BONA FIDE PURCHASER.—In 1854 a married man obtained a patent to land in his own name, as assignee of the certificate under which it was located. The wife obtained a divorce in 1862, but neither claimed or had set apart to her any property. The husband died, leaving a second wife, to whom he devised the land. The second wife sold the land to one who was ignorant of the fact that the husband had ever before been married, and who, on examination of the records, found a title

down to his vendor, perfect on its face. In an action by the divorced wife against the purchaser to recover a community interest in the land, *held*, that the purchaser acquired the title.

ERROR from Hill. Tried below before the Hon. Jo. Abbott.

*B. D. Tarleton*, for plaintiff in error, on his proposition that the court erred in rendering judgment for the plaintiff, because the will of Edward W. Brown having assumed to dispose of the whole of the land in controversy as the separate property of said Brown, and the plaintiff having acquiesced in the will after probate, beyond the term of four years she is precluded from contesting the validity of the will, and the diposition of the property made under it, cited Anderson v. Stewart, 15 Texas, 286–291.

On his proposition that the land being patented in the name of E. W. Brown, if the proposition of the court be correct, viz., that after the divorce the property lost its community character, and Sarah Brown occupied toward E. W. Brown the relation of any other joint tenant, then, from the date of said divorce, the legal title was in E. W. Brown alone, and parties purchasing from him with no knowledge of the existence or claim of Mrs. Sarah Brown, in good faith paying a valuable considertion for the land, and honestly believing they were getting title thereto, should be protected, he cited Flannagan v. Oberthier, 50 Texas, 379; Wimberly v. Pabst, 55 Texas, 587; Vaughan v. Greer, 38 Texas, 530; Clarke v. Koehlor, 32 Texas, 683.

*Ivy & Ivy* and *Croft & Blanding*, for defendant in error, cited Wright v. Wright, 7 Texas, 526; Andrus, Executor, v. Nancy Randon, 34 Texas, 536; Whetstone v. Coffey, 48 Texas, 269 (see this case in full); Veramendi v. Hutchins, 48 Texas, 550.

E. W. Brown could not by will give a greater title to the land than he had: Conn v. Davis, 33 Texas, 203, 208; Carroll v. Carroll, 20 Texas, 731; Powell v. Haley, 28 Texas, 52; Briscoe v. Bronaugh, 1 Texas, 326; Parks v. Willard, 1 Texas, 350; Martel v. Somers, 26 Texas, 551; Cordova v. Hood, 17 Wallace, 1; 13 American Law Register, new series, 334; Carr v. Hilton, 1 Curt. C. Ct., 390.

They also cited Glasscock v. Hughes, 55 Texas, 461; Morris v. McKinney, Dallam, 619; Paschal's Digest, article 19,432, and cases cited; Buffalo Bayou Ship Channel Company v. Bruly, 45 Texas, 6.

(On motion for rehearing, F. G. Morris filed an elaborate printed argument.)

GAINES, ASSOCIATE JUSTICE.    There is much in the transcript of the proceedings in the court below, not necessary to be considered in disposing of this case in this court.    As actually tried, it was a suit by defendant in error against plaintiffs in error, for the recovery of an undivided one-half interest in a tract of land consisting of three hundred and twenty acres, patented to Edward W. Brown, as assignee of Justice D. Price.

It was proved on the trial that Edward W. Brown and Sarah Brown, the plaintiff in the court below, were married in 1848, and were divorced in 1862.    The decree of divorce made no disposition whatever of their property, either community or separate.    The Price certificate was transferred to the husband in 1852, and the patent to the land in controversy issued to him in 1854.    In 1864 or 1865, Edward Brown married again, and shortly thereafter died, leaving a will, which was duly probated, by which he devised the land in controversy to his second wife, Mary S. Brown.    In 1867 Mary S. Brown married one John Haynes, and in 1871 they conveyed the land in controversy to Victoria M. Edwards, who was then the wife of T. C. Edwards, one of plaintiffs in error.    Victoria Edwards died before the institution of this suit, leaving plaintiffs in error as her only heirs.    Thomas C. Edwards testified that he bought the land from Haynes and wife, paying for it with his wife's money, and believed she was getting a good title; that he went to Wood county and examined the will of E. W. Brown, and knew nothing of Sarah Brown or her claim until a very short time before this suit was brought.

The court below in its conclusions of fact, says that there is no controversy about the facts of the case, which is equivalent to finding that Edwards's testimony is true; but found as a matter of law, that "Sarah Brown's right in the land is and was as fully recognized by law as that of E. W. Brown;" that "her title was a legal title, and hence subsequent purchasers were bound to take notice," and that "they can not be innocent purchasers without notice."    In this conclusion the court erred.

It is settled law in this State that the interests of the husband and wife in the community property are equal whether the deed be taken in the name of either or in the name of both.    (Veramendi v. Hutchins, 48 Texas, 531; Cooke v. Bremond, 27 Texas,

460; Mitchell v. Marr, 26 Texas, 330; Higgins v. Johnson, 20 Texas, 389.) And there are decisions of our courts in which the title of the wife or of her heirs in the common estate held in the name of the husband is denominated a legal title. (Johnson v. Harrison, 48 Texas, 268; Garner v. Thompson, 1 Texas Law Review, 286.) But, as we take it, by this must be meant the wife or her heirs have beneficial title in fee simple, which, save as to the husband's power of management and disposition during her life, and power to sell for the payment of community debts after her death, is in no degree subordinate or inferior to his right. The legal title is in him, or the heirs of him who is the grantee on the face of the conveyance, although another, such, for example, as a wife or a partner, may have an equal interest in the property conveyed.

But it may be further remarked that it does not follow that because one may have the legal title, another may not acquire a superior equity as a bona fide purchaser. The holder of the legal estate by an unrecorded deed can not prevail over a purchaser from his grantor, who has paid value without notice of the unrecorded conveyance. We think, therefore, that the premises upon which the learned judge below based his conclusion of law upon this proposition are not sound. It may be that if it had appeared from the patent that it issued to E. W. Brown upon a certificate granted to him as the head of a family, this would have been sufficient to put a purchaser upon inquiry as to the question whether his family did not consist in part of a wife; but the fact is otherwise. The patent shows that it issued to him as assignee of the Price certificate, and there is nothing upon its face to indicate that, at the time he acquired his right, he was other than a single man.

The remark in Garner v. Thompson, supra (an opinion by the Commissioners of Appeals, adopted by this court), that the purchaser must take notice of the title papers of the land he purchases, our marital rights laws, the existence of the vendor's family and their rights to the land was not called for in the decision of that case and is not considered authoritative, as applied to a case like the present when there is nothing in the conveyance to indicate that the grantor at the time of the execution was a married man. If a vendee is to be required to inquire into his vendor's family history in order to ascertain whether the property was community or not, why should he not be held to

inquire his business history and thus be affected with notice of secret trusts on behalf of partners or other third parties?

But a discussion of the question is no longer necessary. Since the trial of this case in the court below, the precise point now before us was, after elaborate argument on both sides, thoroughly considered in the case of Hill v. Moore, 62 Texas, 610, and it is there held in effect that if the property be in the name of the husband alone, a purchaser under him who has paid value, without actual notice of the wife's interest, will be protected against her claims or that of her heirs.

The uncontroverted facts in this case being that Thomas C. Edwards purchased the land in controversy for his wife and with her money, without any knowledge of the claim of defendant in error, the equity of the heirs of Mrs. Edwards must prevail over that of Mrs. Brown.

The judgment will accordingly be reversed and rendered in favor of plaintiffs in error for the land claimed by them in this suit and for all costs both in this court and in the court below.

*Reversed and rendered.*

Opinion delivered May 6, 1887.

### ON MOTION FOR REHEARING.

GAINES, ASSOCIATE JUSTICE. An able and elaborate argument has been filed in behalf of the motion for rehearing in this case. The questions involved are important, and we deem it proper, therefore, to discuss briefly the points we are asked to reconsider.

It is insisted, in the first place, that the court is in error in treating the title of Mrs. Brown to one-half of the community land held in the name of her divorced husband, as an equitable and not a legal estate. In support of this we are cited to the third section of the act of 1848 (Paschal's Digest, art. 4642), which reads as follows: "All property acquired by either husband or wife during the marriage, except that which is acquired in the manner specified in the second section of this act, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only," etc. This statute defines what shall be the community property, but does not, as we think, touch the question before us. In passing that act, the Legislature did not have under consideration the

form of the conveyance, and upon that subject no provision is there made.

If it had provided that all property conveyed either to the husband or wife during the marriage should belong to the common estate, this would have placed the legal title in both. But no such language is used. Such, in fact, is not the meaning or effect of the section, as is shown by the decisions of our courts, for it is uniformly held that property so conveyed may be shown to be the separate property of either spouse, by satisfactory proof that it was paid for by his or her separate funds or estate. (Parker v. Coop, 60 Texas, 112; King v. Gilleland, 60 Texas, 271; Love v. Robertson, 7 Texas, 6; Huston v. Curl, 8 Texas, 239; Stoker v. Bailey, 62 Texas, 299; Cleveland v. Cole, 65 Texas, 402; Smith v. Strahan, 16 Texas, 314; Dunham v. Chatham, 21 Texas, 231.)

The rule of decision laid down in the cases cited and universally adopted in our State is inconsistent with the idea that the words "acquired by either husband or wife," are to be construed as having the same meaning as the words "conveyed to either husband or wife." It seems to us, therefore, that in framing this statute, the Legislature had in view, the consideration by which the property should be acquired, and did not intend to provide that a conveyance made either to the husband or wife singly during marriage shall pass the legal title of the estate to both. Such a construction is not consistent with the act of February 5, 1840, which directed the mode, by which land should be conveyed in this State, and the effect of which was to place the legal title in all property conveyed according to its provisions, in the grantee named in the conveyance. It is inconsistent also, with our registration laws, which require conveyances to be recorded, with the object of exposing the chain of the legal title to the inspection of purchasers and of thereby protecting them against secret claims.

The civil code of Louisiana goes further than our statute, and provides, among other things, that all property acquired by purchase during the marriage "even although the purchase be only in the name of one of the two and not of both," shall be community property. (Civil Code of Louisiana, art. 2371); and under this the courts of that State hold, that property paid for by the separate funds of either the husband or wife is common property whether conveyed to one or both, unless it be shown, that at the time of the conveyance, it was the intention to make

it the separate property of the one whose funds were used in the purchase. (Provost v. De la Houssaye, 5 La. An., 610; Young v. Young, 5 La. An., 611; Dominguez v. Lee, 17 La., 296; Davidson v. Stewart, 10 La., 148.) It thus appears, that by reason of the use of the words we have quoted, a different construction is placed upon that article of the Louisiana code from that given to our statute by our courts.

We conclude that the object of our law makers in enacting the statute we have had under consideration, was to provide that all property acquired during the marriage by the labor of either the husband or wife or the joint labor of both, as well as the increase and proceeds of such property, should belong beneficially to both, although the legal title should be conveyed to one only; and that they did not mean that the legal title should be in both the husband and wife, when the property was not conveyed to both in accordance with the provisions of our statute regulating conveyances.

But it is also urged that our ruling upon this question is in conflict with the former decisions of this court. Let us, then, briefly review the cases which are relied upon to support the contrary doctrine.

The point decided in Yancy v. Batte, 48 Texas, 46, and Johnson v. Harrison, Id., 257, is that a purchaser of community property from the husband after the death of the wife, in order to defeat the claim of the heirs of the wife to one-half of the property, must show that the land was sold for the purpose of paying debts, if he rely upon that defense, and that the burden was not upon the heirs to prove that there were no debts. It is evident that this does not involve the question of the legal title of the wife. The rule would be the same whether it should be held that the legal title was both in the husband and wife, or in the husband alone for the benefit of both. The husband would have no right to sell the wife's equitable title except to pay debts. To make this clear, let us suppose that some third party holds the naked legal title to land in trust for the benefit of the husband and wife as of their community estate. The husband could sell his interest, but, after the death of the wife, could he sell her interest except to pay community debts? He certainly could not. He would have no more power to dispose of it than he would if the property had been expressly conveyed both to him and to his wife. Hence we can not see that the court in those cases was called upon to determine this question, and can

but consider the remark of the learned judge in the case of Johnson v. Harrison, to the effect that the legal title to one-half of the property was vested in the heirs of the wife, as a dictum only. It may be further remarked that it does not appear from the report of that case that the deed was made to the husband alone. The effect of our decisions is that, upon the death of either partner of the marital union, the interest of such decedent in the community estate descends directly to the heirs, and that although that interest is chargeable with the payment of comumnity debts, yet their right is not a mere equity of redemption, like that of a mortgagor at common law, but a present interest. It is in this sense that it has been said that the heirs take a legal estate. If their ancestor have a legal title to one-half of the community, they take a legal title to the same. The cases when properly construed go no further than this.

The case of Tieman v. Robson, 52 Texas, 411, cited in support of the doctrine that there can not be a bona fide purchase of community property, held in the name of the husband and sold after the dissolution of the marriage, does not support that proposition. The point was made in the pleadings of the defendant, but was not raised in the brief of counsel, and was not noticed by the court in the opinion. In fact, it appears from the statement of the case made by the reporter that it is most likely that the defendant who purchased at a sale by the administrator of the husband knew that the land was the community property of the husband and of his first wife, and the plaintiffs claimed as heirs.

The case before us is distinguishable from that of Zimpelman v. Robb, 53 Texas, 274. In that case both parties claimed under a deed made in the name of the husband—the defendants by virtue of a duly recorded conveyance, made by the wife at a time when she was abandoned by her husband, and the plaintiffs under a subsequent deed, executed by the husband himself. The court held that the registration of the deed from the wife was notice to the purchaser from the husband. But it is to be noted that, in their pleadings, plaintiffs did not deny that they knew of the relationship of the husband and wife, but merely alleged that they did not know the fact that he had ever abandoned her. Now, it may be that, knowing that the parties lived together as husband and wife, and that the land was conveyed to the husband during the existence of this relation, they should have been held to the duty of making inquiry as to the

existence of any fact that would have authorized the wife to convey, and to the examination of the records in order to ascertain whether or not she had, in fact, conveyed the property. If they had averred and shown that they did not know that their grantor ever had a wife, they would have presented a very different case, and one which, in our opinion, would have called for a different ruling.

We have endeavored to show that the legal title to the land in controversy in this suit was in E. W. Brown at the time of his death, though appellee, as his divorced wife, had an equal beneficial interest in the property; and by this means to bring the case strictly within the rule laid down in Hill v. Moore, 62 Texas, 610, cited in the former opinion.   But we do not wish to be understood as holding that it was necessary that this should be done in order to uphold the decision in this case.   The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable; and justice demands this in the one case as well as in the other.   In fact, our registration acts protect innocent purchasers as fully against the legal title as against an equitable claim.

There has been a conflict of decision upon this question in courts of equitable jurisdiction, mostly in suits which have been brought to enforce the right of dower.   Judge Story, after stating that it had been held by tribunals of high authority that a plea of bona fide purchaser would not prevail against a suit in equity for dower—that being a legal estate, says: "Other learned minds have, however, arrived at a different conclusion, and have insisted that, upon principle, the plea of a purchaser for a valuable consideration without notice, is a good plea in all cases against a legal, as well as against an equitable claim, and that dower constitutes no just exception to the doctrine. They put themselves upon the general principles of conscience and equity, upon which such a plea must always stand; that such a purchaser has an equal right to protection and support as any other claimant, and that he has a right to say, that having bona fide and honestly paid his money, no person has a right to require him to discover any facts which shall show an infirmity in his title.   The general correctness of the doctrine can not be doubted, and the only recognized exception seems to be that of dower, if that can be deemed a fixed exception."   (1 Story's Eq. Jur., sec. 631.)

Upon the general principles of conscience and equity, to which

this learned jurist appeals, we see no good reason why the purchaser in this case should not be protected, although the title of appellee should be held a legal and not merely an equitable one. The distinction between the legal and the equitable title, as applied to this class of cases, is shadowy and arbitrary, and ought not to be recognized under our blended system and the general policy of our registration laws.

The case before us well illustrates the justice of the doctrines which we have announced. In 1854 the husband obtained a patent in his own name as assignee to the land in controversy. Appellee obtained a divorce in 1862, but did not, in her action, set up any claim to the community property. The husband died, having married again and having devised the lands to his second wife; the purchaser from the devisee was ignorant that Brown ever had a former wife, and paid for the land, after having examined the record and found upon its face a perfect title in the devisee by consecutive chain from the sovereignty of the soil. Justice demands that a title so acquired should be protected.

We think the conclusions in the opinion formerly delivered in this case correct, and the rehearing will, therefore, be refused.

*Rehearing refused.*

Opinion delivered June 25, 1887.