### WILSON et al. v. SHEAR CO. et al.
### (No. 302.)

Court of Civil Appeals of Texas.  Waco.
Oct. 20, 1927.

Rehearing Denied Dec. 15, 1927.

**1. Corporations ⬳123(7)—Qualified title at least held to remain in pledgor; there being no question but that stock was only pledged.**

Where there was no question but that party held certificate of stock only as pledge, *held*, that qualified title at least remained in pledgor.

**2. Corporations ⬳123(7)—General property right in stock pledged remains in pledgor, subject to pledgee's lien.**

General property right in stock pledged remains in pledgor, subject to pledgee's lien, until stock is sold under foreclosure by pledgee.

**3. Corporations ⬳123(7)—Where pledgee lost pledged stock and finder returned it to pledgor, held, that it was not incumbent on pledgor to refuse to receive possession.**

Where pledgee lost pledged stock, and finder returned it to pledgor, and pledgor did not have any information as to how certificate left possession of pledgee, *held*, that as matter of law and prudence it was not incumbent on pledgor to refuse to receive certificate from finder or trust finder to return same to pledgee, but, on contrary, it would have been an act of imprudence and total disregard of pledgee's property rights and interest in certificate for pledgor to have refused to receive possession of certificate.

**4. Corporations ⬳123(7)—Where pledgee lost stock, and finder returned it to pledgor, and evidence failed to disclose any false pretext of pledgor, held, that pledgor came into possession lawfully.**

Where pledgee lost stock which was negotiable and could have been hypothecated by finder, thereby endangering interests of both pledgee and pledgor, and there was no evidence that pledgor to whom finder returned it obtained certificate by any false pretext or with any intent to deprive owner of value thereof, *held*, that only legitimate conclusion was that pledgor came into possession of certificate by lawful means.

**5. Embezzlement ⬳16—Pledgor, repledging stock after first pledgee had lost same, held not guilty of theft as bailee (Pen. Code 1925, art. 1429).**

Where pledgor pledged certificate of stock, and pledgee lost same, and finder returned it to pledgor, who repledged it with another, *held*, that pledgor was not guilty of theft as bailee, as defined by Pen. Code 1925, art. 1429.

**6. Bailment ⬳1—"Bailment" is delivery of personal property to another for purpose, express or implied.**

"Bailment" is delivery of personal property to another for some purpose, express or implied, that such purpose shall be carried out.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bailment.]

**7. Embezzlement ⬳16—Bailment under statute is bottomed on contract, express or implied, between bailor and bailee (Pen. Code 1925, art. 1429).**

Bailment under Pen. Code 1925, art. 1429, defining theft as bailee, is bottomed on contract, express or implied, between bailor and bailee.

**8. Embezzlement ⬳16—Delivery of property by bailor to bailee for particular purpose is essential to "bailment" contemplated by statute (Pen. Code 1925, art. 1429).**

An essential element of bailment is delivery of property to bailee for particular purpose, and without such delivery there can be no bailment, as contemplated by Pen. Code 1925, art. 1429, defining theft as bailee.

**9. Embezzlement ⬳16—Pledgor accepting stock from finder after pledgee had lost it held not guilty of theft, embezzlement, or other criminal offense (Pen. Code 1925, arts. 1410, 1534).**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder returned it to pledgor, who received possession of it, *held*, under Pen. Code 1925, art. 1410, defining theft, and article 1534, defining embezzlement, that pledgor was not guilty of "theft" or "embezzlement" or of any other criminal offense in acquiring possession of certificate of stock.

**10. Embezzlement ⬳26—Where pledgee lost pledged stock, and finder returned it to pledgor, who repledged it, held pledgor did not violate any criminal statute.**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder returned certificate to pledgor, who repledged it, *held*, that pledgor did not violate any criminal statute, since pledgee's rights were dependent on his possession as pledgee.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
3 S.W.(2d)—54

**11. Corporations ⊚⇒147—Law applicable where pledged property is taken from pledgee by commission of criminal offense held inapplicable to act of pledgor in repledging stock, where pledgee had lost same and finder returned it to pledgor.**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder thereof returned certificate to pledgor, who repledged it, *held*, that law applicable in cases where pledged property is taken from possession of pledgee by commission of criminal offense or by fraudulent means without any fault or negligence of pledgee did not apply.

**12. Corporations ⊚⇒123(11)—Evidence held to support jury's finding that bank was bona fide purchaser of stock which it sold under lien as pledgee.**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder returned certificate to pledgor, who repledged it with bank for another loan, and bank foreclosed its lien and bought stock at sale, evidence *held* sufficient to support jury's finding that bank was bona fide purchaser for value without notice of any claim of first pledgee to stock.

**13. Corporations ⊚⇒123(11)—Bank as second pledgee purchasing stock at sale, foreclosing its lien, held to have good title as against first pledgee, who had lost stock, where finder returned it to pledgor, who repledged it.**

Where pledgor pledged stock, and pledgee lost same, and finder returned certificate to pledgor, who repledged it with bank for another loan, and bank bought same at sale under its lien, *held* that, bank having acquired possession of and title to certificate for valuable consideration and without any notice of claim acquired by pledgee prior thereto, said bank took title as against pledgee, since pledgor was rightfully in possession of stock against all persons, subject only to secret equity of pledgee.

**14. Estoppel ⊚⇒72—Where pledgee lost stock, and it was returned to pledgor, who repledged it with bank, assuming bank and pledgee were both innocent, held loss should fall on pledgee, since act made loss possible.**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder returned it to pledgor, who repledged it with bank, and bank bought same at sale foreclosing its lien, and first pledgee asserted his right, *held*, that, even if first pledgee and bank were both innocent, still loss would fall on pledgee, whose act in losing stock made loss possible.

**15. Corporations ⊚⇒123(10)—Pledgee's negligence held for jury, where stock was returned to pledgor, who repledged it, and first pledge attempted to assert his right.**

Where pledgor pledged stock, and pledgee lost same, and finder returned it to pledgor, who repledged it with bank, and later sought to assert his right against bank, *held*, that question of pledgee's negligence in losing stock was for jury.

**16. Corporations ⊚⇒123(10)—Evidence held to sustain finding of jury that pledgee losing certificate of stock was negligent.**

Evidence *held* to sustain finding of jury that pledgee losing stock was negligent, where he

attempted to assert his right against bank with which pledgor had repledged same.

**17. Corporations ⊚⇒123(10)—Ordinarily prudent man would not carry stock valued at $6,000 or $7,000, indorsed in blank, in his coat pocket day after day.**

Ordinarily prudent man would not carry certificate of stock valued at $6,000 or $7,000, indorsed in blank, around in his coat pocket day after day and pay no attention to it.

**18. Corporations ⊚⇒123(10)—Negligence of pledgee in losing certificate of stock, enabling pledgor to repledge same with bank, as proximate cause of its being repledged, held for jury.**

Where pledgor pledged stock with pledgee for loan, and pledgee lost same, and finder returned it to pledgor, who repledged it with bank, and first pledgee attempted to assert his right against bank, *held*, that question whether negligence in losing stock was proximate cause for its being pledged to bank was question of fact for jury.

**19. Negligence ⊚⇒59—To be "proximate cause" act must be such that result ought reasonably to have been foreseen or anticipated by those responsible.**

In order for act to be "proximate cause" of an injury or result, it must be such an act that said injury or some similar injury or result ought reasonably to have been foreseen and anticipated by those responsible for said act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**20. Corporations ⊚⇒147—Pledgee carrying stock indorsed in blank in pocket ought to have anticipated that, if lost and found by third party, such party could thereby clothe self with all indicia of ownership.**

Pledgee knowing certificate of stock was indorsed in blank, who carried same around in his pocket, ought reasonably to have anticipated that, if lost and passed into hands of some third party, such party by inserting his name in blank indorsement could and might thereby clothe self with all indicia of ownership, and so be enabled to hypothecate same or surrender same and have new certificate issued to himself.

**21. Negligence ⊚⇒56(1)—Proximate cause is not always cause nearest to injury or result, but may be first link in chain or series of causes.**

Proximate cause is not always cause nearest to injury or result, but may be first link in chain or series of causes.

**22. Corporations ⊚⇒123(10)—Evidence held to sustain jury's finding that negligence of pledgee was proximate cause of certificate of stock being repledged with bank.**

Where pledgor pledged stock as security for loan, and pledgee lost same, and finder returned it to pledgor, who repledged it with bank, and pledgee attempted to assert his right against bank, evidence *held* to sustain jury's finding that negligence of pledgee was proxi-

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mate cause of certificate being pledged with bank.

**23. Pledges** ⟨key⟩11—**Under both civil and common law, possession of pledged property is necessary to validity of pledge.**

Under both civil and common law, it is necessary to validity of pledge that possession of pledged property be delivered to pledgee or to some one for him, and not only the creation of pledgee's lien is dependent on property so delivered, but continuation of such lien is dependent on its continued possession by pledgee.

**24. Corporations** ⟨key⟩123(10)—**Where because of pledgee's negligence stock was lost and repledged with bank, held it would be inequitable to permit pledgee to recover certificate from bank.**

Where pledgor delivered pledged stock to pledgee as security for loan, and pledgee lost same, and finder returned it to pledgor, who repledged it with bank, and pledgee had carried stock around in pocket, *held* that, since pledgee's negligence in carrying stock around in pocket was responsible for stock being pledged to bank, it would be inequitable and unjust to permit pledgee to recover it from bank.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Suit by the Citizens' National Bank of Waco against the Shear Company, in which Grace J. Witherspoon, T. C. Phillips, and Nettie L. Wilson were interpleaded, and the two latter filed cross-actions. · From the judgment rendered, Nettie L. Wilson and others appealed. The Commission of Appeals (292 S. W. 531, 294 S. W. 843) affirmed the judgment of the Court of Civil Appeals (284 S. W. 654), in so far as it reversed the judgment of the trial court as between Nettie L. Wilson and the Shear Company, and reversed the judgment dismissing the appeal of T. C. Phillips from a judgment for plaintiff, and remanded that branch of the cause for disposition on the merits. Judgment for plaintiff affirmed on the merits.

Spivey & Spivey, of Waco, for appellants.
H. M. Richey, of Waco, for appellees.

STANFORD, J. During a prior term of this court, the above cause as between Mrs. Nettie L. Wilson, Appellant, v. Shear Co., Appellee, was reversed and remanded. The appeal in said cause as between T. C. Phillips, Appellant, v. Citizens' National Bank, Appellee, was dismissed. The judgment of the trial court as to all other parties was affirmed. See Nettie L. Wilson et al. v.· Shear Co. et. al., 284 S. W. 654. Separate applications for writ of error by Nettie L. Wilson and T. C. Phillips were granted by the Supreme Court, and on hearing in said court the judgment of this court reversing and remanding said cause as between Nettie L. Wilson and the Shear Company was affirmed, but the judgment of this court dismissing the appeal of T. C. Phillips, Appellant, v. Citizens' National

Bank, Appellee, was reversed, and this branch of the case remanded to this court for disposition upon its merits. Shear Co. et al. v. Wilson (Tex. Com. App.) 292 S. W. 531. So we will now consider same upon its merits.

The controversy between appellant T. C. Phillips and appellee Citizens' National Bank was as to their respective rights to certificate No. 16 for 25 shares of stock in the Shear Company; appellant alleging that on about May 23, 1920, C. W. Wilson executed and delivered to him a note for $5,000, and, to secure same, pledged to him said certificate of stock in the Shear Company, and that afterwards, without fault or negligence on his part, he lost said certificate of stock, and that same, being found, was returned to C. W. Wilson, and that Wilson thereafter fraudulently and wrongfully negotiated said stock to the Citizens' National Bank, and he (Phillips) sought judgment establishing the priority of his title and lien to said certificate of stock. Appellee Citizens' National Bank alleged, in substance, that, by reason of the form and negotiable character of said certificate of stock, and by reason of the fact that it is a bona fide holder for value in due course of said certificate of stock, and without any notice of the claim of appellant or any one else to said stock, it has a superior right and title thereto against said Phillips or any other person claiming same. Other matters in reply to the pleading of appellant Phillips will be stated in the course of this opinion.

In answer to special issues submitted, the jury found:

(1) That T. C. Phillips did loan C. W. Wilson $5,000 on May 23, 1920, and took his note therefor, due six months after date.

(2) That C. W. Wilson did deliver to T. C. Phillips on May 23, 1920, certificate No. 16 issued by the Shear Company to C. W. Wilson, certifying that C. W. Wilson was the owner of 25 shares of the capital stock of the Shear Company, in pledge to secure T. C. Phillips in the payment of said $5,000 note.

(3) That T. C. Phillips did lose said certificate No. 16 out of his possession while holding it as a pledge for the payment of said note for $5,000.

(4) That T. C. Phillips did lose said stock certificate No. 16 around Easter Sunday, 1921.

(5) That T. C. Phillips, at the time of the loss of said certificate, did fail to exercise ordinary care in the safe-keeping in his possession of said certificate of stock.

(6) That the failure of T. C. Phillips to exercise ordinary care in the safe-keeping of said certificate of stock was negligence on his part, resulting in the loss by him of said certificate of stock.

(7) That T. C. Phillips, after he had information that said certificate of stock No. 16 had been found and returned to C. W. Wilson, through agreement with C. W. Wilson did ac-

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cept from C. W. Wilson his note for $5,000, dated May 23, 1920, in lieu of and in extinguishment of the duplicate note of C. W. Wilson for that amount, in consideration that C. W. Wilson would execute a deed of trust in favor of T. C. Phillips on land in Young county, Tex., as security for said duplicate note.

(8) That the execution by C. W. Wilson of the note delivered by him to A. D. Rogers at San Antonio, Tex., was intended by T. C. Phillips and C. W. Wilson to be a novation of the original indebtedness as evidenced by the note of C. W. Wilson in the sum of $5,000 executed at the time T. C. Phillips loaned to him said sum of money.

(19) The negligence of T. C. Phillips in losing said stock certificate No. 16 was a proximate cause for the same, having been pledged by C. W. Wilson to the Citizens' National Bank.

(20) The Citizens' National Bank of Waco, on or about May 23, 1921, did receive from C. W. Wilson, in pledge, stock certificate No. 16 issued by the Shear Company to C. W. Wilson, as owner of 25 shares of stock, to secure the payment of a loan at that time made by the bank to C. W. Wilson, without notice or knowledge on the part of said bank that T. C. Phillips was then claiming said certificate of stock and the right of possession thereto by virtue of the same having theretofore been pledged to him by C. W. Wilson as a security for an indebtedness claimed to be due said Phillips by C. W. Wilson.

In response to a peremptory instruction, the jury found that the Citizens' National Bank of Waco is the owner of stock certificate No. 16 issued by the defendant the Shear Company, as against the defendant Nettie L. Wilson. Upon the above findings of the jury and such additional findings as the court was authorized to make under the pleadings and evidence, the court entered judgment for appellee Citizens' National Bank for the title and possession of the stock in controversy as against appellant T. C. Phillips and all other parties to said suit. T. C. Phillips alone appealed from this judgment. The statement of the case in Wilson et al. v. Shear Co. et al. (Tex. Civ. App.) 284 S. W. 654, will assist in understanding the issues in this branch of the case.

Under his twelfth assignment, appellant contends the trial court erred in refusing to instruct a verdict in his favor. The face of said certificate of stock was as follows:

"This certifies that C. W. Wilson is the owner of twenty-five shares of the capital stock of the Shear Company, transferable on the books of the corporation in person or by attorney on surrender of this certificate.

"H. H. Shear, President.
"Harold Shear, Secretary."

On the back of said certificate was the following:

"For value received, —— hereby assign and transfer unto ——, —— shares of the capital stock represented by the certificate on the reverse hereof, and do hereby appoint —— attorney, irrevocable, to transfer the said stock on the books of the corporation, this —— day of —— A. D. 19—.

"[Signed] C. W. Wilson."

[1-4] On May 23, 1920, C. W. Wilson borrowed $5,000 from T. C. Phillips, executing a note therefor, and at the same time indorsed in blank the above transfer on the back of stock certificate No. 16 and pledged same with Phillips to secure the payment of said note. About March 26, 27, or 28 (Easter Sunday), 1921, T. C. Phillips lost said certificate of stock and note out of his coat pocket in Hillsboro, Tex. Said certificate was found by an interurban employee in or about the interurban station and was afterwards mailed from Hillsboro to C. W. Wilson, at Waco. On May 25, 1921, C. W. Wilson borrowed $4,000 from appellee the Citizens' National Bank, giving his note therefor, and at the same time delivered said certificate of stock as a pledge under a collateral contract to secure the payment of said note. The Citizens' National Bank, at the time it accepted said certificate as a pledge and loaned C. W. Wilson $4,000 thereon, had no notice that any one else had any right to or interest in said certificate. C. W. Wilson failed to pay said $4,000 note and the Citizens' National Bank foreclosed its pledgee's lien on said stock as per the terms of its collateral contract with C. W. Wilson, and bought said stock at such sale, thereby acquiring title to same. There being no question but that Phillips held the certificate only as pledge, it necessarily follows that at least a qualified title to said certificate of stock remained in the pledgor, C. W. Wilson. 31 Cyc. p. 787, and cases there cited. The general property right in stock pledged remains in the pledgor, subject to the pledgee's lien, until the stock is sold under foreclosure by the pledgee. 14 C. J. p. 731, and cases there cited. Undoubtedly, from the very nature of the transaction between C. W. Wilson and T. C. Phillips, Wilson, after the pledge, continued to own a beneficial interest in the certificate of stock and had the general property right therein. There is no contention that Phillips lost possession of the certificate of stock otherwise than by his own act of losing same while carrying it about in his coat pocket while at Hillsboro. So it must be conceded that the person who came into possession of the certificate after its loss by Phillips did so as an innocent finder of it. There being no indicia of ownership on the certificate in any person other than C. W. Wilson, the finder, as an act of honesty and right, in the absence of other information, should and did return the same to Wilson. There is no evidence in the record that at the time Wilson received the stock he had any information as to how it left the possession of Phillips. As

a matter of prudence and law, it was not incumbent upon Wilson to refuse to receive possession of said certificate from the finder, or trust the finder to return the same to Phillips. On the contrary, it would have been an act of imprudence and total disregard of his property rights and interests in said certificate for him to have refused to receive possession of the certificate from the finder and trust the finder to deal with it as his honesty and convenience might dictate. Wilson had an equity in said certificate, according to the evidence, of $1,500 to $2,000. It was in a quasi negotiable form, and in such form could have been hypothecated by the finder and thereby the interests of both Wilson and Phillips endangered. There is no evidence in the record that Wilson obtained the certificate by any false pretext or with any intent to deprive the owner of the value thereof. The only legitimate conclusion to be drawn from the undisputed evidence is that Wilson came into possession of the certificate by lawful means.

[5] But appellant contends that, in pledging said stock to the Citizens' National Bank, C. W. Wilson was guilty of either ordinary theft, theft as bailee, or embezzlement. That he was not guilty of ordinary theft, nor embezzlement, is too clear, we think, for argument. See articles 1410 and 1534, Criminal Statutes of 1925, defining theft and embezzlement, respectively. Was he guilty of theft as bailee? Our statute defining theft as bailee is as follows:

"Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as for theft of like property." Article 1429, Criminal Statutes, 1925.

[6-11] A bailment is a delivery of personal property to another for some purpose, express or implied, that such purpose shall be carried out. Fulcher v. State, 32 Tex. Cr. R. 621, 25 S. W. 625; Neel v. State, 33 Tex. Cr. R. 408, 26 S. W. 726. A bailment, under our statute, is bottomed on a contract, express or implied, between the bailor and bailee. There can be no contention under the evidence in this case that the property came into the possession of C. W. Wilson by virtue of a contract, expressed or implied, between Phillips and Wilson. An essential of a bailment is the delivery of property by the bailor to the bailee for a particular purpose, and without such a delivery there can be no bailment, as contemplated by our statute. Northcutt v. State, 60 Tex. Cr. R. 259, 131 S. W. 1128, 31 L. R. A. (N. S.) 822; Calkins v. State, 34 Tex. Cr. R. 251, 29 S. W. 1081; Campos v. State, 84 Tex. Cr. R. 216, 207 S. W. 931; Rundell v. State, 90 Tex. Cr. R. 410, 235 S. W. 908. Under no view of the evidence, we think, could it be

said Wilson was guilty of theft, theft as bailee, embezzlement, or any other criminal offense in acquiring possession of said certificate of stock. Neither do we think Wilson violated any criminal statute in his subsequent dealings with said certificate; appellant's rights being dependent upon his possession as pledgee. At any rate, the principles of law applicable in cases where the pledged property is taken from the possession of the pledgee by the commission of a criminal offense or by fraudulent means without any fault or negligence of the pledgee have no application here, and the court was correct in refusing to instruct a verdict for appellant upon the grounds here urged. We overrule all assignments presenting the above contention.

[12] The uncontroverted evidence in this case is that appellee bank acquired the possession of the certificate of stock as a pledgee from C. W. Wilson, as pledgor, to secure a loan at that time made by the bank to Wilson for $4,000, evidenced by Wilson's note, which contained a written contract of pledge, and which authorized the bank to sell said certificate upon default in payment of said note. Wilson did default in the payment of said note and appellee, as per the terms of said contract, did foreclose its pledgee's lien and acquired title to said certificate. There is no complaint of the manner of such foreclosure. So before this suit was brought the appellee's lien had ripened into title to said certificate. The record discloses further that said certificate was issued to C. W. Wilson and there was nothing on the face of the stock to indicate that Phillips, or any one else, other than C. W. Wilson, owned any character of title or interest in same. The evidence is undisputed that at the time said certificate was pledged to the bank and at the time the bank bought same it had no knowledge or notice of any kind that appellant or any one else was claiming any interest therein whatever as pledgee or otherwise, or that it had ever been lost by any one. The jury by its findings established that the bank was a bona fide purchaser for value without notice of any claim of Phillips in the stock, and such finding is supported by all the evidence. In Hill v. Moore, 62 Tex. 613, our Supreme Court said:

"It is a well-recognized doctrine in equity that a bona fide purchaser of the legal title to property, who pays a valuable consideration therefor, without notice, actual or constructive, of the right of other persons, is entitled to protection against others who may have equitable title to or interest in the thing purchased; and it matters not whether the thing purchased be real or personal property. * * * It is also generally held that one who in good faith, for value and without notice, purchases an equity and afterwards acquires the legal title, is also entitled to protection against a prior equity. This is certainly true if the purchaser has no notice at the time he acquires the legal title."

See also, Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 89; Johnson v. Newman, 43 Tex. 640; Stone v. Brown, 54 Tex. 335; Strange v. H. & T. C. Ry. Co., 53 Tex. 170; Anderson v. Waco State Bank, 92 Tex. 506, 49 S. W. 1030, 71 Am. St. Rep. 867.

[13, 14] From the above authorities, we think, the applicable rule may be deduced; the apparent title to the certificate being in Wilson, and the bank having acquired possession of and title to said certificate for a valuable consideration and without notice of any claim acquired by Phillips prior thereto, said bank took title as against Phillips. Wilson was rightfully in possession of said stock against all persons, subject only to the secret equity of Phillips therein. Under these circumstances, it would be a harsh rule to hold that Phillips had a superior title to the bank (Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 89–90); and especially is this true in view of the fact that Phillips parted with his possession by losing same, which, aside from the question of negligence on his part in so doing, made it possible, if not probable, that said certificate would be sold or pledged by some one else. If it be assumed that Phillips and the bank were both innocent, still, we think, the loss should fall on Phillips, the one whose act made the loss possible. In the case of Edwards v. Brown, supra, our Supreme Court, by Justice Gaines, said in part:

"The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable; and justice demands this in the one case as well as in the other."

[15] But in this case the jury found, in substance, that appellant Phillips was negligent in losing said certificate of stock, and that such negligence was the proximate cause of same being pledged to appellee bank. Both these, we think, were issues of fact for the jury. The record discloses that appellant lived at Bowie, Tex., and had for a number of years been engaged in the banking business; that on or about March 27 or 28, 1921, on a Saturday, and while on his way to Waco, carrying C. W. Wilson's $5,000 note and certificate No. 16 for 25 shares of stock in the Shear Company, of the probable value of $7,500, in his coat pocket, he stopped off in Hillsboro, and went to a telephone booth and talked over the phone to Wilson at Waco. He said he had said note and stock in his hands as he talked to Wilson. He remained in Hillsboro Saturday night, Sunday, and Sunday night, and returned home Monday by way of Dallas. Appellant testified:

"I did not pay any special attention to it (the note and stock) after I had talked with him (Wilson) over the phone. I don't even know whether I took it out of my pocket when I got back home for the purpose of putting it in my files or not, and I didn't look to see whether I had the note or stock certificate in my pocket the day I was in Hillsboro. I don't remember examining my coat pocket when I pulled off my coat to go to bed at Hillsboro, to see whether I had the stock certificate or not, I don't remember anything about that, but I take it that I did not examine my coat pocket to see whether or not I had the papers in there. Yes; I was wearing the same suit that Sunday that I wore on Saturday. I did not examine my pocket to see whether I had the stock certificate or note on Sunday."

[16, 17] The record shows that appellant never discovered that he had lost the note and certificate until some two months after he lost them in Hillsboro, and then he did not know where he had lost them. We have not attempted to state all the evidence tending to show appellant was negligent in losing said certificate, but we think the above is sufficient to raise the issue and to sustain the finding of the jury that appellant was negligent in losing said stock. For a man to carry a certificate of stock of the value of $6,000 or $7,000, indorsed in blank, around in his coat pocket day after day and pay no attention to it, is not, we think, what an ordinarily prudent man would have done under the same or similar circumstances; at least this was a proper issue for the jury.

[18-22] We think, also, that whether or not the negligence of appellant in losing said certificate was the proximate cause of its being pledged to appellee bank was a question of fact for the jury. It is true that, in order for an act to be a proximate cause of an injury or result, it must be such an act that said injury, or some similar injury or result, ought reasonably to have been foreseen or anticipated by those responsible for said act. Appellant knew the certificate of stock was indorsed in blank, and, we think, ought reasonably to have anticipated that; if lost and thereby passed into the hands of some third party, such party, by inserting his name in the blank indorsement, could and might thereby clothe himself with all the indicia of ownership, and so be enabled to hypothecate same, or surrender same and have a new certificate issued to himself. The proximate cause is not always the cause nearest to the injury or result, but may be the first link in a series or chain of causes. The term "proximate cause" has been variously defined as: An act which directly produced or concurred directly in producing the injury; an immediate, direct, or efficient cause of injury; that cause which naturally led to and which might have been expected to produce the result; the efficient cause; the cause without which the injury or loss could not have occurred. 32 Cyc. 745. The jury having found that appellant was negligent in losing the stock, we think their further finding that such negligence was the proximate cause of said certificate being pledged with appellee bank is fully sustained by the evidence. But, as above stated, aside from the technical definitions of negligence and proximate cause and the manner in which same are employed, we think, under the well-

established principles of equity and justice, the loss should fall upon the party whose conduct made such loss possible.

[23, 24] Under both the civil and the common law, it is necessary to the validity of a pledge that possession of the pledged property be delivered to the pledgee, or to some one for him, and not only the creation of the pledgee's lien is dependent upon the property being so delivered, but the continuation of such lien is dependent upon its continued possession by the pledgee. 31 Cyc. pp. 799 and 800, and cases there cited. There is no contention but that appellant did lose the possession of said certificate of stock. There is no contention that appellee or any one else in any way caused him to lose said stock or contributed to such result. On the other hand, it is established by all the evidence and the finding of the jury that appellee acquired said stock in good faith for a valuable consideration from the apparent owner, without any notice that appellant had any interest in same. There is no contention that appellee was at fault or in any way to blame in accepting said stock as a pledge for its $4,000 loan, or that appellee did not in accepting said stock for such loan act as any ordinarily prudent person would have done under the same or similar circumstances. But the jury found, and such finding is amply sustained by the evidence, that appellant did fail to exercise ordinary care in the safe-keeping in his possession of said certificate, and that such failure on his part was negligence, resulting in the loss by him. Of course, if appellant had not parted with the possession of the stock, it could not have been pledged to appellee. So appellant's negligence being responsible for the stock being pledged to appellee, it would be inequitable and unjust to permit him to recover it of appellee. We overrule all of appellant's assignments raising the questions herein discussed.

We have considered all of appellant's assignments, and, finding no reversible error, overrule the same, and affirm the judgment of the trial court on this branch of the case.