## PHILLIPS v. CITIZENS' NAT. BANK et al.
### (No. 980—5126.)

Commission of Appeals of Texas, Section B. April 3, 1929.

Spivey & Spivey, of Waco, for plaintiff in error.

H. M. Richey, of Waco, for defendants in error.

SHORT, P. J. The Citizens' National Bank of Waco sued the Shear Company, and that company impleaded T. C. Phillips and Mrs. Nellie L. Wilson. The suit involved the right to certificate No. 16 for 25 shares of the capital stock of the Shear Company, which had been issued to C. W. Wilson and by Wilson pledged to T. C. Phillips to secure a loan of $5,000 and thereafter again pledged to the Citizens' National Bank to secure a loan of $4,000; Mrs. Wilson claiming the shares of stock as her separate property as having been issued in lieu of old certificate No. 112 for shares of stock in the Rotan Grocery Company, the predecessor of the Shear Company, and pleading through the alternative that the reissuance of her stock in her husband's name had resulted in a loss to her for which she sought damages. From an adverse decision Mrs. Wilson and T. C. Phillips prosecuted separate appeals. The appeal of Phillips was dismissed, and that of Mrs. Wilson was sustained, and as to her claim against the Shear Company the cause was remanded. (Tex. Civ.

App.) 284 S. W. 654. Upon writ of error, the judgment of the Court of Civil Appeals reversing and remanding the cause as between Mrs. Wilson and the Shear Company was affirmed, but its judgment dismissing the Phillips' appeal was reversed and the cause remanded to that court for disposition on the merits. 292 S. W. 531. Upon a consideration of this suit between the Citizens' National Bank and T. C. Phillips, the Court of Civil Appeals affirmed the judgment of the trial court. Wilson v. Shear Co., 3 S.W.(2d) 849.

The certificate of stock over which this controversy rages was as follows:

"This certifies that C. W. Wilson is the owner of 25 shares of the capital stock of the Shear Company transferable on the books of the corporation in person or by attorney on surrender of this certificate.

"H. H. Shear, President.
"Harold Shear, Secy."

On the back of the certificate was the following:

"For value received ——— hereby assign and transfer unto ———, ——— shares of the capital stock represented by the certificate on the reverse hereof and do hereby appoint ——— attorney irrevocable, to transfer the said stock on the books of the corporation, this ——— day of ———, A. D. 19—.

"[Signed] C. W. Wilson."

On May 23, 1920, C. W. Wilson borrowed $5,000 from T. C. Phillips, executing a note therefor, and at the same time pledged the above certificate to secure the payment of said note. Thereafter, about Easter Sunday, 1921, T. C. Phillips lost the certificate and note attached out of his coat pocket while in Hillsboro, Tex. The papers were found by an interurban employé in or about the interurban station and were by him mailed to C. W. Wilson at Waco. On May 25, 1921, C. W. Wilson borrowed $4,000 from the Citizens' National Bank, giving his note therefor, and at the same time delivered the certificate of stock as a pledge to secure the payment of that note. Upon Wilson's failure to pay the $4,000 note, the Citizens' National Bank foreclosed its pledgee's lien, according to the terms of its collateral contract with Wilson, and bought the stock at such sale.

The cause was tried to a jury upon special issues, including the following, which were answered as indicated:

"3. Did T. C. Phillips lose said stock certificate No. 16 out of his possession while holding it as a pledge for the payment of said note for $5,000? Answer: Yes."

"5. Did T. C. Phillips at the time of the loss of said Certificate No. 16 fail to exercise ordinary care in the safekeeping in his possession of said certificate of stock? Answer: Yes.

"6. Was the failure of T. C. Phillips to exercise ordinary care in the safekeeping of said certificate of stock negligence of the part of T. C. Phillips resulting in the loss by him of said certificate of stock? Answer: Yes.

"7. Did T. C. Phillips, after he had information that said certificate of stock No. 16 had been found and returned to C. W. Wilson, through agreement with C. W. Wilson, accept from C. W. Wilson his note for $5,000 dated May 23, 1920, in lieu of and in extinguishment of the duplicate note of C. W. Wilson for that amount, in consideration that C. W. Wilson would execute a deed of trust in favor of T. C. Phillips on land in Young County, Texas, as security for said duplicate note? Answer: Yes.

"8. Was the execution by C. W. Wilson of the note delivered by him to A. B. Rogers at San Antonio, Texas, intended by T. C. Phillips and C. W. Wilson to be a novation of the original indebtedness as evidenced by the note of C. W. Wilson in the sum of $5,000 executed at the time T. C. Phillips loaned to him said sum of money? Answer: Yes."

"In this connection you are charged that by the term 'novation' is meant the substitution of a new debt or obligation for an existing one which thereby extinguishes the original by mutual consent by both parties to the contract with the intent that the new note is to operate as a release of the original debt."

The plaintiff in error duly objected to the submission of the issues above stated.

The Court of Civil Appeals predicated its decision upon three grounds: First, that the stock certificate was a negotiable or at least quasi negotiable instrument, and the Citizens' National Bank took it for value without notice of any vice in Wilson's apparent title; second, upon the estoppel of Phillips through his negligence in the loss of the certificate to assert title to it; and, third (impliedly), upon the ground of release by novation. We will notice these points in the order named.

The ordinary stock certificate, such as that involved in this case, is not negotiable under the law merchant. It is true by the custom of the country stock certificates pass current after the manner of negotiable notes, but at last the certificate is not the stock in the corporation, but is mere evidence of it, and such instrument is not negotiable under the law merchant. As stated by Mr. Cook, in his work on Corporations (volume 2, § 358), quoted in United States Fidelity & Guaranty Co. v. Ramey (Tex. Civ. App.) 261 S. W. 503: "One of the most important elements of negotiability of promissory notes is that, if the holder of such note loses it, or it is stolen from him, when it is endorsed in blank, a subsequent bona fide purchaser of such note is protected as against the person who lost it. A different rule seems to prevail as regards certificates of stock endorsed in blank and then lost or stolen. In this respect certificates of stock are not negotiable. It has been clearly held that a purchaser from a thief of

certificates of stock, endorsed in blank, is not protected, nor is any subsequent purchaser of that identical certificate allowed to claim the stock, unless the owner has been guilty of negligence."

And the same opinion quotes from Scollans v. Rollins, 173 Mass. 275, 53 N. E. 863, 73 Am. St. Rep. 284, as follows: "Under our decisions the property of the true owner of documents of the nature of those now in question is not divested by a sale to a purchaser, in good faith and for value, from one who has got them feloniously from the true owner, nor by any subsequent dealing of such a purchaser with the documents, but the property remains with the true owner from whom they were feloniously taken. The real ownership in such documents follows the general rule as to the ownership of chattels, the only exception to which is as to property which consists of the currency of the country or securities which by the law merchant are negotiable."

In 14 Corpus Juris, p. 664, it is said: "Certificates of shares of stock are not, in a proper sense, negotiable instruments, either in form or character even though a form of assignment and power of attorney to make the necessary transfer accompanies the certificates and is signed in blank by the owner; and they are not governed by the laws relating to such instruments; nor are they commercial paper."

Such stock certificates are but personal property, and the ordinary rule of caveat emptor obtains in their sale or assignment.

■■ While the Citizens' National Bank did not take title upon any principle of negotiability, yet by negligence proximately causing it to accept the certificate and to part with its money in exchange for it as security, Phillips could estop himself to assert his legal title. Undoubtedly Phillips was the owner of the legal title to the certificate and the stock which it represents. He could not part with that legal title merely by the loss of the certificate, whether negligent or otherwise. The principle upon which he could lose to the Citizens' National Bank is not upon the passing of his legal title, but rather upon estoppel, by reason of his negligence, to assert his superior legal title. Equitable estoppel to assert a fact in no way denies the truth of the thing asserted. Gose v. Brooks (Tex. Civ. App.) 229 S. W. 979. In view of the fact that certificates of stock, when indorsed in blank, are transferable by mere delivery, they are frequently referred to as quasi negotiable. But in such cases the transfer of the title is really upon the principle of estoppel. 14 C. J. p. 665. Thus where an owner of such certificate trusts it to another for a particular use and that other exceeds his actual authority and transfers the certificate to an innocent purchaser for value, the latter may successfully hold the same as against the real owner through estoppel.

■ Here the estoppel relied upon is the negligence of Phillips in losing the certificate. The issue submitted is as broad as the pleading, and no act of negligence is found except the loss of the certificate. By special issues 5 and 6 the bare loss of the certificate is submitted as an act of negligence. Now the mere happening of an accident not only does not show negligence, but it does not tend to do so. It is no evidence of negligence. Texas & P. Railway Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; Trinity County Lumber Co. v. Denham, 85 Tex. 56, 19 S. W. 1012; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538. The mere fact of losing the certificate, in the absence of all evidence as to how the loss occurred, is no proof of negligence. Biddle v. Bayard, 13 Pa. 150. But it is not enough to create estoppel that the loss was through negligence. It must further appear that such negligence was the proximate cause of the subsequent acquisition by another. In other words, the loser must have anticipated in law that the finder would probably transfer the certificate to another. Now, since by loss of the instrument Phillips did not lose the title to the certificate and its subsequent transfer by the finder or any one acquiring possession of it would be wrongful, if not criminal, no rule of law will require that he should anticipate such a thing would be done. The most reasonable thing to anticipate would be that the finder would make an effort to restore it to the real owner, or at least he would not wrongfully and fraudulently sell the same. The law will not require one to anticipate that another will commit a crime, as has been done in this case. If the appropriation of the certificate by Wilson is not technically theft or theft by bailee, nevertheless its pledge to the Citizens' National Bank for the delivery of a loan was swindling. The negligence of Phillips in losing the certificate, if negligence had been shown, nevertheless could not, as a matter of law, be the proximate cause of the Citizens' National Bank accepting it in pledge for a loan.

■ This brings us to a consideration of the question of release by novation. The evidence shows that C. W. Wilson executed two renewal or duplicate notes in the series of transactions involved in this case. The first was a duplicate of the one lost by Phillips, and the second was executed at San Antonio in lieu of the one previously executed to Phillips and is the one referred to in issues 7 and 8.

The jury answered both of these issues in the affirmative. It has been seen that the court accompanied these issues with a proper instruction as to the meaning of the term "novation." It is evident the two issues refer to the same transaction, and must therefore be considered together. By the answer to issue 7 it is shown that the consideration for the "extinguishment" of the prior "note" was that C. W. Wilson would execute a deed of trust in favor of T. C. Phillips on certain land

in Young county, Tex., as security for the new note. It is undisputed that such deed of trust was never executed, so that whatever may have been the intention of the parties, there has been no novation. The most that can be said is there was an accord without satisfaction. Moreover, we have carefully examined the evidence and fail to find any evidence whatever that it was the intention of T. C. Phillips and C. W. Wilson, or of either of them, that the renewal of the duplicate note executed at San Antonio was intended to extinguish the original indebtedness and pledge. The finding of novation cannot be sustained.

We recommend that the judgments of the district court, and of the Court of Civil Appeals affirming it, be reversed, and the cause be remanded to the trial court for another trial not inconsistent with this opinion.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.